# OCTOBER 11, 1933

### JOE HOLYFIELD v. THE STATE.

No. 15991. Delivered April 19, 1933.
Rehearing Denied October 11, 1933.
Reported in 63 S. W. (2d) 386.

The opinion states the case.

*Dan P. Chisholm* and *Underwood & Strickland,* all of Amarillo, and *E. Byron Singleton,* of Lufkin, for appellant.

*James V. Allred,* Atty. Gen., *T. S. Christopher,* Asst. Atty. Gen., and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—By complaint and information, it is charged that:

"Joe Holyfield * * * in the county and state aforesaid, did then and there unlawfully operate a commercial motor vehicle upon a public highway in Randall County, Texas, to-wit: Highway No. 33, in Randall County, Texas, outside of the limits of an incorporated city or town, then and there having a net load exceeding 7,000 pounds on said commercial vehicle, against the Peace and Dignity of the State of Texas."

A jury was waived and the court entered a judgment of conviction, assessing against appellant a fine of one dollar.

Section 5 of chapter 282, Acts of 42nd Legislature, Regular Session, reads as follows:

"No commercial motor vehicle, truck-tractor, trailer, or semitrailer shall be operated on the public highway outside of the limits of an incorporated city or town with a load exceeding

seven thousand (7000) pounds on any such vehicle or train or combination of vehicles; and no motor vehicle, commercial motor vehicle, truck-tractor, trailer or semi-trailer having a greater weight than six hundred (600) pounds per inch width of tire upon any wheel concentrated upon the surface of the highway shall be operated on the public highways outside of the limits of an incorporated city or town; provided, however, that the provisions of this section shall not become effective until the first day of January, 1932."

So far as applicable, section 5 (b) of chapter 282, is as follows:

"The limitations imposed by this Act as to length of vehicle or combination of vehicles and weight of loads and of height of vehicle with load shall not apply to vehicles when used only to transport property from point of origin to the nearest practicable common carrier receiving or loading point or from a common carrier unloading point by way of the shorest practicable route to destination; *provided,* said vehicle does not pass a delivery or receiving point of a common carrier equipped to transport such load, or when used to transport property from the point of origin to point of destination thereof when the destination of such property is less distant from the point of origin thereof than the nearest practicable common carrier receiving or loading point equipped to transport such load; provided, however, that in no event except by special permit," etc.

From Pampa, in Gray County, to Farwell, in Parmer County, the distance is 160 miles, and to Clovis, New Mexico, the distance is ten miles more. Appellant operated a truck and trailer weighing something over 18,000 pounds, with 10,000 pounds of gasoline from Pampa, Texas, to Clovis, New Mexico. The Panhandle & Santa Fe Railroad runs through Gray County on the way to Amarillo, with stations in Gray, Carson, and Potter counties. The same railroad runs from Amarillo to Farwell, in Parmer County, with the station of Canyon in Randall County, and Hereford, in Deaf Smith County, and others. On the railroad mentioned (which runs from Pampa to Farwell), there are twelve stations shown on the map, including Panhandle, Amarillo, Canyon, and Hereford, all of which are towns of considerable size. Through Gray County, there also runs the Chicago, Rock Island & Gulf Railroad, with four stations in Gray County, four in Carson County, and one in Potter County before reaching Amarillo. From Pampa to Farwell, the state highway runs parallel with the railroads mentioned above.

According to the statement of facts, none of the stations

mentioned were equipped to transport gasoline except where it was tendered in containers or in carload lots. Appellant possessed no *containers* and no equipment for loading tank cars. The expense of provding such loading equipment would amount to $1,500.00. In weight, a carload of gasoline would exceed a truck load by approximately 25,000 pounds. The appellant's truck was licensed to carry up to 14,000 pounds of gasoline. The expense of transporting gasoline from Pampa to Farwell by rail would exceed the cost of shipping it by truck.

The statement of facts is meagre. However, the foregoing is regarded as a summary of the evidence portrayed before the trial judge. In addition thereto, there is some data showing the location of railroads and highways which we understand is permissible under the doctrine of judicial knowledge. See 16 Cyc. 861, and notes.

It is the appellant's contention that the evidence does not justify a conviction. It is obvious from the statement of facts that the appellant, using a commercial vehicle, hauled a load of gasoline weighing more than 7,000 pounds over the public highway outside the limits of an incorporated town. Appellant defends upon the ground that his action was rendered legal by the provisions of section 5 (b) of Chapter 282, supra. He specifically claims that between Farwell and Pampa, and between Clovis and Pampa, there was no "practicable" common carrier or receiving or loading point. He contends that, in the absence of facilities for furnishing him containers for his gasoline, and for loading tank cars with gasoline, the railroad stations were not "practicable" within the meaning of the law.

From the opinion of the Supreme Court of the United States in the case of Sproles v. Binford, 286 U. S., 374, 76 L. Ed., 1167, dealing with the identical section of the law now under consideration, the following is quoted:

"Objection is made to * * * permitting an additional length of vehicles and greater loads than 7,000 pounds (up to 14,000 pounds) when the vehicles are operated, as stated, between points of origin, or destination, and 'common carrier receiving or loading,' or unloading, points. Appellants urged that this provision, by reason of the use of the terms 'nearest practicable common carrier receiving or loading point' and 'shortest practicable route to destination,' and 'common carrier receiving or loading point equipped to transport such load,' is so uncertain that it affords no standard of conduct that it is possible to know. We cannot agree with this view. The 'common carrier receiving or loading points,' and the unloading points, described, seem

quite clearly to be points at which common carries customarily receive shipments, of the sort that may be involved, for transportation, or points at which common carriers customarily unload such shipments. 'Shortest practicable route' is not an expression too vague to be understood. The requirements of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. * * * The use of common experience as a glossary is necessary to meet the practical demands of legislation. In this instance, to insist upon carriage by the shortest *possible* route, without taking the practicability of the route into consideration, would be but an arbitrary requirement, and the expression of that which otherwise would necessarily be implied, in order to make the provision workable, does not destroy it.

\* \* \* \*

"The State provides its highways and pays for their upkeep. Its people make railroad transportation possible by the payment of transportation charges. It cannot be said that the State is powerless to protect its highways from being subjected to excessive burdens when other means of transportation are available."

With regard to the term "practicable," the following appears in Corpus Juris, vol. 49, p. 1309:

"A term, as defined by the lexicographers, having a number of meanings, and frequently used in statutes, not always with the same meaning."

"The courts in construing it have given it that meaning indicated by the general text of the act in which it is found and the evident purposes the legislature had in view." (State v. Stevens County Super. Ct., 131 Wash., 20, 228 Pac., 842.)

In some of the books the word has been defined as "that may be practiced or performed; capable of being put into practice, done, or accomplished." See Words & Phrases, 4th Series, vol. 3, p. 134.

The evident motive of the Legislature in passing the part of the act in question was to accord to the commercial motor vehicles that convenience which was compatible with the interest of the state in preserving and maintaining the highways which had been constructed and were maintained at the expense of the state. It is manifest from the act that the use of highways by commercial vehicles carrying a weight of over 7,000 pounds was contrary to the interest of the state, and that the

public interest demanded restriction in the use of them to short, as contradistinguished from long, hauls.

Passing many points used by railroads for receiving and discharging freight, the appellant operated a truck and trailer with a load of more than 7,000 pounds upon a highway parallel and near to the railroad reaching the appellant's point of destination, passing through many cities and towns such as Amarillo, Panhandle, Hereford and others. All of the cities named were railroad points of importance. The statement of facts does not specifically disclose what is meant by the terms used touching facilities of connecting carriers. Section 5 (b) relied upon by appellant as authorizing the use of the highway, contains the following:

"Provided, said vehicle does not pass a delivery or receiving point of a common carrier equipped to transport said load."

The only information given by the statement of facts as a reason for the failure to deliver his load to a common carrier is that the carrier would not furnish him "containers" for the shipment of gasoline, and that it was not "equipped" to handle less than carload lots of gasoline unless tendered in "containers." In what particular the facilities offered fell short of such as were customary is not disclosed by the statement of facts. The law contains the requirement that the common carrier be equipped to transport such load. We perceive nothing in the record to show that the railroad companies mentioned were not equipped to transport such loads in accord with prevailing custom.

In his brief, appellant suggests that the evidence shows that the transportation of gasoline from Pampa to Farwell and Clovis would be cheaper, that is, that gasoline could be sold at a profit at a lower price if the appellant was permitted to carry the prohibited load in his truck instead of either confining himself to the lawful limitation and not exceed 7,000 pounds, or following the statutory direction to deliver it to the connecting carrier. On this suggestion, he claims that the term "practicable" as used in the statute should be prefixed with the term "commercially" so as to be "commercially practicable." We think the contention is not tenable. On the evidence before the trial judge, this court is not authorized to disturb the verdict. The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant moves for rehearing, and requests that we discuss and differentiate holdings of other

courts of other states in other cases on facts which he seems to think more or less like the one before us. Our former opinion is adhered to, after considering appellant's motion in the light of the argument therein, the authorities cited, and the law as it is written.

We quoted in said opinion most of section 5 (b) exempting certain commercial vehicles from the limitation as to load weights fixed by section 5 of the act in question. We note that in specific terms such vehicles with loads of more than 7,000 pounds are exempted *only* when moving from the origin of said load to its destination and vice versa, and by way of the shortest practicable route. This comports with the purpose of the law which is to protect, as far as practicable, the highways from injurious commercial traffic.

Appellant's general proposition is that under a proviso in said section 5 (b), and the facts in his case, he had the right without penalty to haul a truckload of gasoline weighing 10,000 pounds from Pampa, Texas, over a state highway paralleling and near to a railroad, passing through a number of towns and cities named in our opinion, for a distance of 160 miles to the state line. As we understand it, he does not contend that Pampa has no railway facilities for loading and unloading from or upon railway cars, freight, including gasoline. Nor that Amarillo,—another city through which both the highway and railroad pass,—is without such facilities. Nor does he contend that our Railroad Commission has no power to fix by proper regulation the kind and character of packages, containers, or cars in or upon which any and all freight, including gasoline, may be shipped over such common carriers, nor that this has not been done. The exact part of said proviso relied on by appellant is as follows: 'Or when used to transport property from the point of origin to point of destination thereof when the destination of such property is less distant from the point of origin thereof than the nearest practicable common carrier receiving or loading point equipped to transport such load.'' We dare say that under rules and regulations made by our Railroad Commission all the gasoline seeking shipment from Pampa to common carrier points can be shipped in drums without violation of law or injury to the peoples' roads; but, if compelled to construe the quoted proviso of section 5 (b), we would first call attention to the fact that it only refers to the transportation of property from a point of origin to some destination nearer to such point of origin than any common carrier "equipped to *transport* such load." If this means, or is intended to mean,

other than that such property may only be carried in heavier-than-allowed loads, on highways to a common carrier's nearest receiving point provided with ordinary practicable loading and carriage facilities for such freight,—then we would hold its terms unintelligible to such a degree as to cause serious doubt as to what it means, and we would conclude that such doubt should be solved in favor of giving effect to the evident purpose of the whole act, which is the protection of the highways; and we would further hold that the proviso exempts no other than such vehicles when going with their heavier-than-allowed loads from and to points of origin and destination by the nearest practicable route, without passing common carrier receiving or unloading points.

Believing the case correctly decided in the original opinion, the motion for rehearing will be overruled.

*Overruled.*