## SOUTHWESTERN GREYHOUND LINES, INCORPORATED, V. RAILROAD COMMISSION OF TEXAS ET AL.

No. 7104. Decided November 25, 1936.
Rehearing overruled January 27, 1937.
(99 S. W., 2d Series, 263.)

*Price & Christopher,* and *William E. Dahl,* all of Fort Worth, for plaintiff in error.

The passage of the Federal Motor Carrier Act by the Congress of the United States constituted such an occupancy of the field of interstate regulation of motor carriers by Congress as to deprive the State of Texas of all power of the regulation of interstate commerce, except as to certain appropriate police regulations. USCA, Title 49, secs. 301-327; Gibbons v. Ogden, 9 Wheat, 1, 6 L. Ed., 23; Northern Pac. Ry. Co. v. State of Washington, 222 U. S., 370, 32 Sup. Ct., 160; Bowman v. Chicago & N. W. Ry. Co., 125 U. S., 465, 8 Sup. Ct., 689.

*William McCraw,* Attorney General, *Curtis E. Hill,* Asst. Atty. Gen., for defendant in error, Railroad Commission of Texas, and *J. E. Quaid* and *R. R. Rawlins,* of El Paso, for defendant in error, E. A. Jackson.

The passage of the Federal Motor Carrier Act by Congress of the United States did not deprive the Railroad Commission of Texas of the right to exercise reasonable control over the highways of the State. Illinois Cent. Ry. Co. v. Public Utilities Commission, 245 U. S., 493, 38 Sup. Ct., 170, 62 L. Ed., 425; and cases there cited.

MR. JUSTICE SHARP delivered the opinion of the court.

On February 19, 1935, Edward A. Jackson filed with the Railroad Commission of this State his application under the Texas Motor Carrier Act (Acts 1927, c. 270, p. 399, as amended, now Art. 911a, Vernon's Ann. Civ. St.), for a certificate of convenience and necessity to operate a motorbus service, exclusively for interstate purposes, from Anthony, N. M., a point just across the New Mexico line, over Texas highways, via El

Paso, Abilene, and Fort Worth to Dallas, Texas. The Railroad Commission granted such certificate on September 27, 1935. The Southwestern Greyhound Lines, Inc., an interested party and competitor, appealed from such order by filing suit in the District Court of Travis County to set aside the order and for an injunction to restrain Jackson from operating under such certificate, and to restrain the Railroad Commission from permitting him to do so. The temporary injunction was by the trial court granted, as prayed for, on October 5, 1935; from which order Jackson and the Railroad Commission appealed. The Court of Civil Appeals dissolved the injunction as being issued improvidently, and remanded the cause. (92 S. W. (2d) 296). This Court granted a writ of error.

This cause brings into review for the first time by this Court the Federal Motor Carrier Act, 1935, Acts 74th Congress, Senate Bill 1629, U. S. C. A., Title 49, Secs. 301 to 327, inclusive. This law was approved by the President of the United States on August 9, 1935. The act is very comprehensive in its terms, and clearly shows that it was the purpose of Congress to legislate and to declare its policy to regulate transportation by motor carriers engaged in interstate commerce on the highways. We shall mention only those parts pertinent to a decision of the question before us. Section 302 of this Act sets forth the declarations of policy and delegation of jurisdiction of the Interstate Commerce Commission, and in order to show the full purpose of the Act we copy the whole section:

"(a) It is hereby declared to be the policy of Congress to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical, and efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices; improve the relations between, and coordinate transportation by and regulation of, motor carriers and other carriers; develop and preserve a highway transportation system properly adapted to the needs of the commerce of the United States and of the national defense; and cooperate with the several States and the duly authorized officials thereof and with any organization of motor carriers in the administration and enforcement of this chapter.

"(b) The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged

in interstate or foreign commerce and to the procurement of and the provision of facilities for such transportation, and the regulation of such transportation, and of the procurement thereof, and the provision of facilities therefor, is hereby vested in the Interstate Commerce Commission.

"(c) Nothing in this chapter shall be construed to affect the powers of taxation of the several States or to authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof. (Feb. 4, 1887, c. 104, Part II, § 202, as added Aug. 9, 1935, c. 498, § 1, 49 Stat. 543.)"

Section 303 contains the definitions and exceptions contained in the Act.

Subsection 10 thereof reads: "The term 'interstate commerce' means commerce between any place in a State and any place in another State or between places in the same State through another State, whether such commerce moves wholly by motor vehicle or partly by motor vehicle and partly by rail, express, or water."

Subsection 12 reads: "The term 'highway' means the roads, highways, streets, and ways in any State."

Under various subsections the terms "motor vehicle", "common carrier by motor vehicle", "contract carrier by motor vehicle", "motor carrier", "private carrier of property by motor vehicle", and "broker" are defined.

Subsection 19 reads: "The 'services' and 'transportation' to which this chapter applies include all vehicles operated by, for, or in the interest of any motor carrier irrespective of ownership or of contract, express or implied, together with all facilities and property operated or controlled by any such carrier or carriers and used in the transportation of passengers or property in interstate or foreign commerce or in the performance of any service in connection therewith."

Subsection 20 reads: "The term 'interstate operation' means any operation in interstate commerce."

Under subsection (b) of Section 303 are described the vehicles excepted from the operation of this Act.

Section 304 describes in exhaustive detail the powers and duties of the Interstate Commerce Commission in the enforcement of this law.

Section 305 describes in what manner the Commission shall administer the provisions of the Motor Carrier Act.

Section 306 relates to the certificate of convenience and necessity, and in part reads:

"No common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations."

Section 307 describes the issuance of the certificate, and Subsection (b) thereof reads as follows:

"*Certificate not to confer proprietary or property rights in highways.* No certificate issued under this chapter shall confer any proprietary or property rights in the use of the public highways. (Feb. 4, 1887, c. 104, Part II, § 207, as added Aug. 9, 1935, c. 498, § 1, 49 Stat. 551.)"

Section 308 describes the terms and conditions of the certificate, the specification of routes and termini, extension of routes, and restriction on additions to equipment.

Section 325 reads as follows:

"*Investigation of motor vehicle sizes and weights and qualifications and hours of service of employees.*

"The Commission is hereby authorized to investigate and report on the need for Federal regulation of the sizes and weight of motor vehicles and combinations of motor vehicles and of the qualifications and maximum hours of service of employees of all motor carriers and private carriers of property by motor vehicle; and in such investigation the Commission shall avail itself of the assistance of all departments or bureaus of the Government and of any organization of motor carriers having special knowledge of any such matter... (Feb. 4, 1887, c. 104, Part II, § 225, as added Aug. 9, 1935, c. 498, § 1, 49 Stat. 566.)"

Section 327 reads:

"*Effective date of chapter.*

"This chapter (except this section, which shall become effective immediately upon approval) shall take effect and be in force on and after the 1st day of October, 1935: *Provided,* however, That the Commission shall, if found by it necesary or desirable in the public interest, by general or special order, postpone the taking effect of any provision of this chapter to such time after the 1st day of October, 1935, as the Commission shall prescribe, but not beyond the 1st day of April 1936.

(Feb. 4, 1887, c. 104, Part II, § 227, as added Aug. 9, 1935, c. 498, § 1, 49 Stat. 567.)"

The main question before us for decision is: Does the Federal Motor Carrier Act confer upon the Interstate Commerce Commission the exclusive power of issuing a certificate of public convenience and necessity to motor vehicles operating upon the highways wholly in interstate commerce? Until this Act was passed by Congress, there was some confusion among the decisions of the courts as to the power of the State to require a motor vehicle operating on the highways wholly in interstate commerce to obtain a permit of public convenience and necessity. Since the enactment of this law, in our judgment, that question is removed, and a decision thereof becomes immaterial.

■ It is common knowledge that many of the highways in this State were built, and are now being built, with Federal aid, by virtue of and pursuant to Federal laws. Act of July 11, 1916, chap. 241, 39 Stat. at L., 355, as amended February 28, 1919, chap. 69, 40 Stat. at L., 1189, 1200, Comp. Stat., § 7477bb, Fed. Stat. Anno. Supp., 1919, p. 299, and the Federal Highway Act, November 9, 1921, chap. 119, 42 Stat. at L., 212, as amended 23 U. S. C. A., § 1, et seq., Comp. Stat., § 7477-¼a, Fed. Stat. Anno. Supp., 1921, p. 95.

The laws of Texas embrace a comprehensive program for the building and maintenance of the State's highways. Some of the Acts are: H. B., 336, Acts 1931, c. 282, and S. B., 11, chap. 42, Gen. Laws of Texas, 41st Leg., 2d Called Session, 1929, now Article 827a, § 1 et seq. of Vernon's Annotated Penal Code, and H. B., 335, Acts 1931, c. 277, now Article 911b, Vernon's Annotated Texas Civil Statutes. We cite some of the leading cases construing these acts. H. B., 336, now part of Article 827a of the Penal Code (Vernon's Ann. P. C.), was upheld in the following cases: Sproles v. Binford, 286 U. S., 374, 52 S. Ct., 581, 76 L. Ed., 1167; Ex parte Sterling, 122 Texas, 108, 53 S. W. (2d) 294; Ex parte Phares, 122 Texas, 104, 53 S. W. (2d) 297; Holyfield v. State, 124 Texas Crim. Rep., 422, 63 S. W. (2d) 386; Stone v. State, 126 Texas Crim. Rep., 491, 72 S. W. (2d) 1118. Likewise, H. B., 335, Article 911b of Vernon's Annotated Civil Statutes, has been construed and sustained in the following cases: Stephenson v. Binford, 287 U. S., 251, 53 S. Ct., 181, 77 L. Ed., 288, 87 A. L. R., 721; Anderson, Clayton & Co. v. State ex. rel. Allred, Atty. Gen., 122 Texas, 530, 62 S. W. (2d) 107; Shupee v. Railroad Com-

mission, 123 Texas, 521, 73 S. W. (2d) 505; Texas & Pacific Motor Transport Co. v. Railroad Commission, 124 Texas, 126, 73 S. W. (2d) 509; Texas Motor Coaches, Inc., v. Railroad Commission, 123 Texas, 517, 73 S. W. (2d) 511. Parts of both Acts, H. B., 335 and H. B., 336, were construed in the case of New Way Lumber Co. v. Smith, 128 Texas, 173, 96 S. W. (2d) 282.

Subsection 3 of Article 911b in part reads as follows:

"No motor carrier shall, after this Act goes into effect, operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation. No motor carrier shall, after this Act goes into effect, operate as a contract carrier without first having obtained from the Commission a permit so to do, which permit shall not be issued until the applicant shall have in all things complied with the requirements of this Act."

■ It will be noted that the Texas law makes no distinction in the regulation of intrastate and interstate carriers.

The Constitution of the United States provides that, "The Congress shall have power * * * to regulate commerce with foreign nations and among the several States and with the Indian tribes." U. S. Const., Art. 1, Sec. 8, Cl. 3. The power of Congress to regulate interstate commerce is supreme. Western Union Tel. Co. v. Jacobs, 115 Texas, 240, 280 S. W., 733; Nevill v. Gulf, C. & S. F. R. Co. (Com. Appls.), 244 S. W., 980; Morris v. State, 62 Texas, 728; 9 Tex. Jur., p. 280, § 15, and cases cited: Rosenberger v. Pacific Express Co., 241 U. S., 48; 36 S. Ct., 510, 60 L. Ed., 880; Chicago, Rock Island & Pac. Ry. Co. v. Hardwick Farmers Elev. Co., 226 U. S., 426, 33 S. Ct., 176, 57 L. Ed., 284, 46 L. R. A. (N. S.), 203; McNeil v. Southern R. Co., 202 U. S., 543, 26 S. Ct., 722, 50 L. Ed., 1142; 12 C. J., p. 12, § 11, and cases cited. When Congress undertakes to legislate over interstate commerce, and in the valid exercise of its power enacts a law regulating same, all existing State laws relating to the very matter covered by the Act of Congress in conflict therewith are superseded. Geer v. St. Louis, S. F. & T. Ry. Co., 109 Texas, 36, 194 S. W., 939; Chicago, R. I. & G. Ry. Co. v. DeBord, 109 Texas, 20, 192 S. W., 767; Western Union Tel. Co. v. Bailey, 108 Texas, 427, 196 S. W., 516; 9 Texas Jur., p. 288, § 20, and cases cited; Erie R. Co. v. People, 233 U. S., 671, 34 S. Ct., 756, 58 L. Ed., 1149,

52 L. R. A. (N. S.), 266; Adams Express Co. v. Croninger, 226 U. S., 491, 33 S. Ct., 148, 57 L. Ed., 314; Spokane, etc., R. Co. v. Campbell, 241 U. S., 497, 36 S. Ct., 683, 60 L. Ed., 1125; 12 C. J., p. 17, § 15, and cases cited. This insures uniformity of regulation. Congress has ever been jealous to protect interstate commerce from conflicting legislation, which would be inevitable if the different States had the power to regulate such commerce independent of the power of Congress. Houston, etc., Ry. v. U. S., 234 U. S., 342, 34 S. Ct., 833, 58 L. Ed., 1341; Addyston Pipe, etc., Co. v. U. S., 175 U. S., 211, 20 S. Ct., 96, 44 L. Ed., 136; Minnesota Rate Cases, 230 U. S., 352, 33 S. Ct., 729, 57 L. Ed., 1511; 12 C. J., p. 9, § 6, and cases cited.

The Supreme Court of the United States has repeatedly held that if Congress has not legislated upon a subject over which it has jurisdiction, a State has the power to prescribe uniform regulations necessary for the safety of the public and the protection of its highways, and such regulations shall apply to all motor vehicles operating upon such highways in both intrastate and interstate commerce. Michigan Public Utilities Commission et al. v. Duke, 266 U. S., 570, 69 L. Ed., 445, 45 S. Ct., 191, 36 A. L. R., 1105, and authorities cited; Buck v. Kuykendall, 267 U. S., 307, 313, 45 S. Ct., 324, 69 L. Ed., 623, 38 A. L. R., 286; Sprout v. City of South Bend, 277 U. S., 163, 72 L. Ed., 833, 48 S. Ct., 502, 62 A. L. R., 45; Sproles et al. v. Binford et al., 286 U. S., 374, 76 L. Ed., 1167, 52 Sup. Ct., 581; C. A. Bradley, etc., v. Public Utilities Commission of Ohio, 289 U. S., 92, 53 S. Ct., 577, 77 L. Ed., 1053, 85 A. L. R., 1131; Bush Co. v. Maloy, 267 U. S., 317, 69 L. Ed., 657, 45 S. Ct., 326.

Prior to the enactment of the Federal Motor Carrier Act, the Supreme Court of the United States had drawn no distinction in its conclusions relating to the regulation by Congress of motor vehicles engaged wholly in interstate commerce on highways constructed or improved exclusively by the State, or constructed or improved with Federal aid. After referring to the Buck Case and the decisions therein, the Court, in the case of Bush Co. v. Maloy, said:

"The federal-aid legislation is of significance, not because of the aid given by the United States for the construction of particular highways, but because those acts make clear the purpose of Congress that state highways shall be open to interstate commerce. The second feature is that here the permit was refused by the Commission, not in obedience to a mandatory

provision of the state statute, but in the exercise, in a proper manner, of the broad discretion vested in it. This difference also is not of legal significance in this connection. The state action in the Buck Case was held to be unconstitutional, not because the statute prescribed an arbitrary test for the granting of permits, or because the Director of Public Works had exercised the power conferred arbitrarily or unreasonably, but because the statute as construed and applied invaded a field reserved by the Commerce Clause for federal regulation."

■ The Federal Motor Carrier Act has been construed by some of the Federal courts, as well as by State courts. L. & L. Freight Lines, Inc., v. Douglass, 14 Fed. Supp., 399; Douglass v. Pan-American Bus Lines, 81 Fed. (2d) 222; Ben Wolf Truck Lines v. Bailey, 1 N. E. (2d) 660; Lowe v. Stoutamire, 123 Fla., 135, 166 So., 310; Britton Motor Service et al. v. Dannmann, 14 Fed. Supp., 634. But, so far as we know, the Supreme Court of the United States has never construed it. An opinion by that court construing this law would be final. In the absence of an opinion by the Supreme Court of the United States construing this Act, we will assume, for the purposes of this opinion, that it is valid. Since we do not have such an opinion by the Supreme Court of the United States, we can construe the Act only in the light of that Court's former opinions, some of which are cited above, construing laws passed by many of the States of the Union regulating motor vehicles operating in interstate commerce.

■ An analysis of the Act clearly shows that it was the purpose of Congress, in enacting this law, to delegate to the Interstate Commerce Commission the exclusive authority to pass upon the application of a motor carrier engaged exclusively in interstate commerce on the highways for a certificate of public convenience and necessity. Such construction of the law does not deprive the State from protecting its highways and the public safety by reasonable and uniform regulations, and exacting reasonable compensation for the use of such highways. Michigan Public Utilities Commission et al. v. Duke, 266 U. S., 570, 69 L. Ed., 445, 45 S. Ct., 191, 36 A. L. R., 1105; Buck v. Kuykendall, 267 U. S., 307, 45 S Ct., 324, 69 L. Ed., 623, 38 A. L. R., 286. It is not necessary to discuss here the extent of the power of a State to make such rules and regulations, nor to define them, because that question is not before us.

■ The Federal Motor Carrier Act was approved by the Presi-

dent on August 9, 1935. Congress having assumed jurisdiction over this class of legislation, such control is exclusive, and such Act of Congress superseded state legislation. Northern Pac. R. Co. v. State of Washington, 222 U. S., 370, 32 S. Ct., 160, 56 L. Ed., 237; Erie R. Co. v. State of New York, 233 U. S., 671, 34 S. Ct., 765, 58 L. Ed., 1149, 52 L. R. A. (N. S.), 266, Ann. Cas., 1915D, 138; 5 R. C. L., p. 704, § 16. Subsequent to the time when the Federal law was enacted, the Railroad Commission granted Jackson a certificate to operate motor vehicles on the highways of this State wholly for interstate commerce. It is not shown from the record that he has applied to the Interstate Commerce Commission for a certificate of public convenience and necessity, or that such certificate has ever been issued to him. In brief, he relies exclusively on the certificate issued to him by the Railroad Commission of Texas to engage exclusively in interstate commerce.

■ It is manifest that it was the intention of Congress for the Interstate Commerce Commission to co-operate with the various states in the administration of the Federal law. That the Federal law does not displace entirely the state laws upon this subject is too plain for argument. It is only where there is an actual and distinct conflict between the laws that the State law will be displaced, and then only as to that part of the State law in actual conflict with the Federal law. 9 Tex. Jur., p. 288, § 20, and cases cited; 12 C. J., p. 15, § 13, and cases cited. That it was the purpose of the federal law to co-operate with the states in the administration of that law is plainly set forth in its provisions. If some tribunal created under the law should act in an unreasonable, unjust, or arbitrary manner, resort to the courts for relief may be had.

■ This case presents no conflict of jurisdiction between the state and federal courts. Jackson is not claiming any rights by virtue of any authority given to him by the Interstate Commerce Commission under the provisions of the Federal Motor Carrier Act. He relies upon the permit issued to him by the Railroad Commission. No attempt to resort to the Federal court is shown. It is not a case where the whole subject is withdrawn from the jurisdiction of the State courts; nor does it appear that the law intended to deprive the State courts of all general and concurrent jurisdiction of matters arising under both the Federal and State laws. The facts of this case do not bring it under the rule announced by that line of decisions which construed certain sections of the Interstate Com-

merce Act to mean that the Federal courts were given exclusive jurisdiction to enforce certain rights under the law which Congress had declared should be enforced only in the Federal courts. Gulf, C. & S. F. R. Co. v. Moore, 98 Texas, 302, 83 S. W., 362, 4 Ann. Cas., 770; Pennsylvania R. Co. v. Puritan Coal Mining Co., 237 U. S., 121, 35 S. Ct., 484, 59 L. Ed., 867; 15 C. J., 1153, § 633. In the case of Pennsylvania Railroad Co. v. Puritan Coal Company, supra, the Supreme Court of the United States said:

"Construing, therefore, §§ 8, 9 and 22 in connection with the statute as a whole, it appears that the Act was both declaratory and creative. It gave shippers new rights, while at the same time preserving existing causes of action. It did not supersede the jurisdiction of state courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of the administrative power and discretion of the Commission; or relate to a subject as to which the jurisdiction of the Federal courts had otherwise been made exclusive. Compare Abilene Case, 204 U. S., 439, 446; Robinson v. Balt. & Ohio, 222 U. S., 506; 36 Stat., 551 (15); 38 Stat., 220."

The petition filed in the trial court by plaintiff in error attacked the order of the Railroad Commission granting Jackson a certificate of convenience and necessity under the Texas Motor Carrier Act, on the ground that the Railroad Commission had no jurisdiction to issue such a permit. It also alleged that the order was unjust, unreasonable, arbitrary, and void, particularly with respect to certain highways over which he was to operate, in that no testimony was presented showing the physical condition of the road or the necessity for such permit. It was also contended that the application of Jackson was not made in good faith, and that the Railroad Commission issued the permit without knowledge of the facts. It was further alleged that if Jackson was permitted to operate such motorbus service over the highways, in competition with the plaintiff in error, it would have no adequate remedy at law, and that such operation would irreparably damage its business and property. The petition prays for a temporary injunction only, in the following language: "* * * that the defendants be temporarily restrained and enjoined," together with their agents or assigns, from "operating a motorbus service over State Highway No. 1 or any other highway, or highways, referred to in the order * * * complained of," and that the defendant Railroad Commission "be enjoined and restrained from

permitting the defendant Edward A. Jackson * * * from operating a motorbus service under and by reason of the order complained of." It was asked that the defendants be temporarily restrained, and that such temporary injunction remain in force until such time as the cause may be heard upon its merits.

On September 30, 1935, the trial court granted a temporary restraining order, and set the cause for hearing on October 5, 1935, at which time the application for temporary injunction was heard by the court and granted. The trial court heard the evidence upon the application for a temporary injunction, and ordered "that the temporary injunction should be granted pending final determination of this cause." It will be noted that the cause was not tried on its merits, nor is the suit intended to interfere with the jurisdiction of the Interstate Commerce Commission in carrying out any of the provisions of the Federal Motor Carrier Act.

The law of Texas specifically provides for a review by the courts of the decisions of the Railroad Commission relating to motor carriers. Article 911b, § 20, of the Texas Motor Carrier Act in part reads as follows:

"If any motor carrier or other party at interest be dissatisfied with any decision, rate, charge, rule, order act, or regulation adopted by the Commission, such dissatisfied person, association, corporation, or party after failing to get relief from the Commission may file a petition setting forth the particular objection to such decision, rate, charge, rule, order, act or regulations, or to either or all of them in the District Court of Travis County, Texas, against said Commission as defendant. Said action shall have precedence over all other causes on the docket of a different nature and shall be tried and determined as other civil causes in said court."

■ Plaintiff in error showed that it was an interested party within the meaning of the foregoing statute, and was authorized to maintain this suit. The trial court had jurisdiction of the subject matter pending a final hearing of the cause, and that court in the exercise of its power had the authority to issue a temporary injunction, as was done. The granting or refusing of a temporary injunction is a matter that rests within the sound discretion of the trial court, and unless it appears from the record that the court has abused that discretion, the action of the court is not subject to review on appeal. If the petition does allege a cause of action, and evidence

tending to sustain such cause of action is introduced, then there is no abuse of discretion by the trial court in issuing the temporary injunction. 24 Tex. Jur., pp. 213, 214, § 253.

The Honorable Court of Civil Appeals erred in holding that the temporary injunction was improvidently issued, and in dissolving same. Therefore, the judgment of the Court of Civil Appeals in that respect is reversed, and the judgment of the trial court, issuing the temporary injunction pending a final hearing of the cause on its merits, is affirmed.

Opinion delivered November 25, 1936.

Rehearing overruled January 27, 1937.