**LONE STAR MINING COMPANY, INC.,
et al., Appellants,**

v.

**TEXERAMICS, INC., Appellee.**

No. 3605.

Court of Civil Appeals of Texas.

Eastland.

Nov. 11, 1960.

Rehearing Denied Dec. 6, 1960.

Simon & Simon, Fort Worth, for appellants.

Creighton & Creighton, Mineral Wells, for appellee.

WALTER, Justice.

Texeramics filed suit against Lone Star Mining Company and Horace H. Porter for damages for conversion of a stock pile of clay and for a temporary restraining order, temporary injunction and a permanent injunction. The court granted a temporary restraining order and after a hearing granted a temporary injunction conditioned upon Texeramics' executing a $5,000.00 bond. The temporary injunction enjoined Lone Star and Porter from interfering with Texeramics' ingress and egress to the land where the clay is stock piled, provided Texeramics shall not remove more than 45 cubic yards from such stock pile each week.

Lone Star and Porter filed a supersedeas bond and appealed from such judgment contending the court erred (1) in granting the temporary injunction because it gives to Texeramics all the relief they seek by the suit (2) in granting the temporary injunction, because the status quo of the subject matter in controversy was disturbed (3) in granting a mandatory injunction and (4) in granting the temporary injunction because Texeramics has an adequate remedy at law.

Texeramics pleaded that it had a contract with Mrs. Gallagher whereby it had the right to go upon Mrs. Gallagher's land and mine, process, stock pile and remove clay; that said clay was used as a basic material in the manufacture of its ceramic floor tile; that it paid Mrs. Gallagher 20¢ per cubic yard for the first 100 cubic yards and 10¢ per cubic yard for any in excess of 100 cubic yards with a guaranteed monthly royalty of $20.00; that it had fully complied with its contract with Mrs. Gallagher; that in the normal course of its mining operations it would mine large quantities of clay and process it to be assured of a standard color in its finished product; that prior to being notified of the termination of its lease it had mined, processed, blended and stock piled and had remaining approximately 1500 cubic yards of clay; that it had title to the stock pile of clay by mining, processing and stock piling it subject only to the payment of royalty which had always been made on a monthly basis; that it had the right of ingress and egress for the purpose of removing the clay by truck to its plant at Mineral Wells; that Lone Star Mining Company also asserted some right to the stock piled clay and had locked the gates to the premises and prevented it from removing its clay; that said clay is of a special nature in Texeramics' manufacturing process in that it burns out a light color which is substantially uniform and is marketed under the brand name of Texeramics' Desert Sand; that it has mixed and processed the clay by blending it to a substantial homogeneous and uniform mass and has introduced it in market channels as a standard Desert Sand color; that the only means it has of maintaining its standard Desert Sand color is from said stock pile of clay; that it only has on hand in its plant at Mineral Wells two days' supply of said clay; that if it were forced to shut down its production of this type of tile it could not fill the orders it now has; that immediate and irreparable injury, loss and damage would result if it were forced to shut down and it had no adequate remedy at law. Lone Star and Porter filed a verified denial but filed no exceptions to Texeramics' pleadings.

Texeramics had been mining and removing clay from land belonging to Mrs. Peggy D. Gallagher in Eastland County since 1954. Pursuant to such contract, Texeramics had mined and mixed to a uniform color approximately 1500 cubic yards of clay at an expense to them of from $800.00 to $1,000.-00. This clay was used in manufacturing a Desert Sand type of tile at Mineral Wells, Texas.

On the 12th day of September, 1960, Lone Star leased said land from Mrs. Gallagher who on the same date notified Texeramics of said lease. On September 23, 1960, Texeramics wrote Lone Star and informed them they had only about a five day supply of shale which it used in the manufacture of its Desert Sand type of tile and requested them to remove their barriers and permit them to remove so much of their stock pile as was needed. Lone Star answered and, in effect, denied them the right to go upon the land and take the clay. Lone Star offered to sell them the clay for about 30 times the amount Texeramics had been paying Mrs. Gallagher. Lone Star's letter recognized that Texeramics had mined the stock pile of clay at its own expense but informed them that it (Texeramics) had no rights in the clay.

Texeramics' manufacturing plant was located at Mineral Wells, Texas, and the clay was trucked from Eastland County to Mineral Wells by an independent contractor. Texeramics sold its tile to distributors and tile contractors in Texas and the eastern part of the United States and in Puerto Rico. Mr. Porter who was the president of the Lone Star Mining Company had a contract with Texeramics for about eight or nine months selling their tile and was acquainted with their method of operation.

■ The trial court is clothed with broad discretion in determining whether or not to issue a temporary injunction. The purpose of a temporary injunction is to preserve the rights of the parties pending a final trial of the case. See Texas Foundries, Inc. v. International Moulders and

Foundry Workers' Union et al., 151 Tex. 239, 248 S.W.2d 460. Our Supreme Court in Southwestern Greyhound Lines, Inc. v. Railroad Commission of Texas et al., 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235, has held that if the petition alleges a cause of action and evidence tending to sustain such cause of action is introduced, there is no abuse of discretion in issuing a temporary injunction.

What is the status quo of the subject matter of the litigation which equity protects until the trial of the main suit on its merits? In James v. E. Weinstein & Sons, Tex.Com.App., 12 S.W.2d 959, 960, it was declared: "The law is well settled in this state that the purpose of the issuance of a temporary injunction is to maintain the status quo in regard to the matter in controversy, and not to determine the respective rights of the parties under the cause of action asserted or defenses urged." When the evidence is viewed in the light most favorable to the judgment, we hold that Texeramics has pleaded a good cause of action and introduced competent evidence which tends to prove its case.

■ The appellants' points that the court erred in granting the temporary injunction because the appellee was given all the relief to which it would have been entitled upon a final hearing on the merits cannot be sustained. Texeramics contends it owns the clay subject to the payment of royalty. Lone Star Mining Company contends it owns the clay by virtue of its lease with Mrs. Gallagher. In the trial of this case on its merits one of the ultimate issues to be determined will be the title and ownership of said stock pile of clay. By permitting Texeramics to withdraw a limited amount of said clay in order to carry on its business, the court has not decided the issue of title and ownership. It has required Texeramics to execute a $5,000.00 bond to protect Lone Star in the event a final judgment is rendered against Texeramics. To dissolve the temporary injunction would put Texeramics out of

business insofar as manufacturing the Desert Sand tile is concerned. The learned trial court limited Texeramics' withdrawal of clay to an amount per week which it thought sufficient to keep them in business insofar as their Desert Sand tile was concerned. Where it appears that a continuation of a temporary injunction cannot imperil the rights of the adverse party, but its dissolution may seriously jeopardize the rights of the complaining party, the temporary injunction should be continued in force. See Pearce et al. v. Atlantic Life Insurance Company, Tex.Civ. App., 36 S.W.2d 553, and Scurry Area Canyon Reef Operators v. Popnoe, Tex.Civ. App., 283 S.W.2d 819.

■■ "The status quo which will be preserved by a preliminary injunction is the last actual peaceable non-contested status which preceded the pending controversy." 43 C.J.S. Injunctions § 17. Texeramics had possession of the clay that it had mined, processed and stock piled, subject to its obligation to pay Mrs. Gallagher her royalty. "Where ore is mined under a lease, the title to it vests absolutely as personal property in the lessee as soon as it is mined and removed from its original place, subject, however, to the royalty rights of the lessor." 58 C.J.S. Mines and Minerals § 177, p. 379. When Lone Star leased from Mrs. Gallagher, it was charged with notice of the rights of those in possession of any part of the leased premises. Some time after acquiring said lease, Lone Star locked the entrance and prevented Texeramics from exercising dominion and control over the clay. It would be premature for us to decide who owns the clay; but, the last actual peaceable non-contested status of the clay was in the possession of Texeramics. "In Red Ball Stage Lines v. Griffin, (Tex. Civ.App.) 275 S.W. 454, 458, Judge Vaughn says: 'The ownership of property prima facie rests with him who has possession, and where wrongfully—that is, in violation of his rights—such owner is deprived of his possession, the equities of the situation rest with him whose possession was thus wrong-

fully disturbed, and, in order to restore the status quo, that the wrongdoer may not gain an advantage by his wrongful act, a court of equity, in the exercise of its powers to prevent a wrong, or to stay one from obtaining an unconscionable advantage over another through a wrong, will, by a writ of mandatory injunction, restore the possession, so that the status of the parties will rest as aforetime.' " Houston Funeral Home v. Boe, Tex.Civ.App., 78 S.W.2d 1091, 1095.

We have examined all of appellants' points and find no merit in them and they are overruled.

The judgment is affirmed.