**F. L. FLYNN et al.**

v.

**Abraham MOSZKOWICZ et ux.**

No. 602.

Court of Civil Appeals of Texas, Corpus Christi.

May 20, 1971.

Ewers, Toothaker, Ewers, Abbott, Evins & Talbot, O. C. Hamilton, Jr., McAllen, for appellants.

Lopez, Galindo & Davidson, Fred Galindo, Brownsville, for appellees.

## OPINION

NYE, Chief Justice.

This is an appeal from an order granting a temporary injunction. The appellees filed suit in the trial court seeking a temporary restraining order, and a temporary and permanent injunction to prohibit the appellant F. L. Flynn from foreclosing under a deed of trust. Upon hearing, the court granted a temporary injunction, enjoining Flynn and the trustee from holding a trustee's sale on the scheduled date and thereafter on the property in question. Flynn has perfected his appeal to this Court.

The material and relevant facts are undisputed. The appellees were owners of a building where they conducted their business. They had purchased the property for $145,000.00. Part of the consideration was the assumption and agreement to pay the remaining balance due on an original $100,000.00 note which was secured by the deed of trust in question. On April 2, 1970,

the note and deed of trust were assigned by the original owner to Flynn, the new owner and holder thereof. At the time of assignment, all of the installments under the note had been timely made, all taxes were paid when due, and the property was fully insured, including a loss payable provision protecting the original owner and holder of the note. After the assignment, Flynn advised appellees, that because he was the new owner and holder of the note, the loss payable clause on the insurance policy should be changed and that the original policy should be transferred to him. Apparently appellees made no response to this request. Appellees had heretofore kept the original policy in their safety deposit box at the bank and had furnished the original owner of the note with just a copy of the insurance policy. No objection to this arrangement was made by the original holder.

On July 24, 1970, Flynn advised appellees by letter that because of his own negligence he had been dilatory in requiring that the original policy of insurance be delivered to him in accordance with the terms of the deed of trust. An exchange of correspondence occurred between the parties relative to Flynn's demand for the original policy of insurance and for a change in the loss payable clause, naming him. The appellees suggested that Flynn talk with their insurance agent. Flynn went to the insurance agent's office and told them that he was the new owner and holder of the note. The insurance agency then prepared a loss payable endorsement to the policy and back-dated it so as to be effective as of April 1, 1970. This loss payable clause endorsement was mailed to appellees so that it could be attached to the original policy.

In the meantime two other disputes arose between the appellees and Flynn. One was, that although appellees' installment payments were current and timely made, they mistakenly denominated the payment as being a different number than the one it actually was. This dispute was finally resolved during the trial. In addition, the monthly payment paid by appellees was two

cents more than it should have been. Flynn objected and appellees ultimately corrected it.

In the latter part of July, appellees' attorney answered Flynn's initial letters advising him that the property was actually fully insured; that a copy of the insurance policy had heretofore been furnished to him; and that the original was in the safety deposit box as had been the custom between the original parties to the note and deed of trust before Flynn had purchased the note. Two days later, on July 31, Flynn wrote appellees' attorney insisting that he was entitled to the original policy as provided by the deed of trust. He stated that such policy should name him as lienholder, and that in the event that appellees failed or refused to furnish him with such coverage immediately, he would take such necessary action to fully protect himself.

On August 11 Flynn purchased a new and different policy of insurance for $50,000.00 from the Flynn-Pan American insurance agency. He sent appellees a copy of the policy and a statement for the cost of such policy in the amount of $449.00. He asked that such amount be remitted to him immediately. Flynn stated if appellees refused to remit such amount, he would declare the entire indebtedness due and payable. The next day appellees mailed their monthly installment check for the correct amount to Flynn. On the same date appellees' attorney advised Flynn that he had over-insured the property by the amount of the new policy of insurance. The attorney stated that he was advising his clients not to pay for the new policy. In the meantime, the appellees went ahead and mailed the original policy to Flynn as requested. Although it was undisputed that a loss payable endorsement covering Flynn that was back-dated to April 1, 1970 was in existence, the endorsement, inadvertently, was not attached to the original policy that was mailed to Flynn.

On August 19, 1970, Flynn's attorneys wrote to the appellees and told them that

because they had failed to keep the property fully insured in a company approved by Flynn, the holder of the indebtedness, because they had failed to give him possession of the original policy, and because they had failed to have such policy made payable to him, he had elected to declare the entire note due and payable. They stated that in addition, Flynn had turned the note over to them for collection. Flynn's attorneys returned the original policy to appellees stating that the policy was unacceptable because the loss payable clause endorsement was not attached. The attorneys stated further that now unless the full amount of principal and interest, plus 10% attorneys' fees were paid, plus the $449.00 for the new insurance policy purchased by Flynn which was due, they would post notice of trustee's sale for foreclosure on the property, in which event an additional 5% trustee fee would accrue. Upon receipt of this letter, appellees filed this suit to enjoin the trustee's sale.

The trial court recited that for the following reasons the temporary injunction should be granted: That the appellees were current in the payment of the monthly installments due under the terms of the promissory note; that copies of the policy of insurance, with a general change endorsement and mortgage clause showing Flynn as loss payee were furnished to Flynn by which he would know that the property in question had been fully insured with a loss payable clause to him prior to the time that he undertook to accelerate the maturity of the note; that the original of said policy of insurance was tendered to Flynn and received by him prior to the notice of acceleration of maturity of the promissory note in question, although the general change endorsement and mortgage clause was inadvertently omitted from the policy; and that at all times the property in question was fully insured with the loss payable clause in defendant Flynn.

Appellant's basis for foreclosure is set forth in the letter from Flynn's attorneys. This letter states: "By reason of your (appellees) failure to keep said property fully insured in some company or companies approved by the holder of said indebtedness, to whom the loss, if any, shall be payable, and by whom the policy shall be kept in accordance with the provisions of the deed of trust, Mr. F. L. Flynn, the owner and holder of this note, has elected to declare same due and payable, and has turned same over to us for collection."

At the time that Flynn elected to accelerate the note, the original policy was in his hands. This was a policy approved by the original holder of the indebtedness to whom Flynn was the successor assignee. Flynn did not have the right to approve or disapprove the insurance company under which the existing policy had been issued, as this was the prerogative of the original holder. Once the appellees had purchased the policy of insurance (approved by the original holder of the indebtedness) then until such time as such policy came up for renewal, the new holder, Flynn, was bound by the agreement between the appellees and his predecessor.

Flynn knew the property was fully insured since he had the original policy in his hands at the time that he elected to accrue the indebtedness. The amount of the policy was $80,000.00, some $30,000.00 more than even Flynn thought was necessary to "fully insure" the property in question. The only other basis which Flynn stated as a reason for the right to mature the indebtedness was the fact that the loss payable provision naming him, was not physically attached to the original policy.

The evidence was undisputed that the loss payable endorsement was issued by the insurance agent, back-dated to the date to which Flynn acquired the indebtedness and a copy of such general change endorsement was delivered to Flynn for his records. As had been the custom between the original holder of the indebtedness and the appellees, the original policy had been kept by the appellees. Therefore, it was not inappropriate for the insurance agent

to mail the original endorsement to appellees to be attached to the original policy. When the original policy was mailed to Flynn, this endorsement was inadvertently not attached. The loss payable clause was in existence and named Flynn as beneficiary. The purpose of the insurance stipulations in the deed of trust was to protect the holder of the indebtedness in case the mortgaged property suffered a loss. This purpose was not rendered meaningless by the failure to attach the loss payable clause to the original policy. The policy of insurance could not be cancelled without surrender of the original policy. Since Flynn had the policy he had control of it. The trial court found in its order that Flynn was fully protected. We agree.

Prior to the acceleration, Flynn attempted to purchase insurance in a company of his own choosing which provided for a loss payable clause in himself. This act could have amounted to an election on Flynn's part to have waived the insurance stipulations set forth in the deed of trust. Of course, the purchase by Flynn of this policy of insurance was unnecessary in view of the trial court's reasons as set forth in its order. Flynn never attempted to establish the indebtedness of such new insurance by affidavit as provided in the deed of trust, nor did he give the nonpayment of this insurance as a basis for the attempted acceleration of the note. We must presume the trial court found against Flynn since no findings of fact or conclusions of law were requested by appellant, nor were any found by the trial court.

■■ A temporary injunction should be granted to maintain the status quo in cases where it is shown that probable injury will result to the complainant if it is not granted. The complainant must show that he is entitled to the writ or that a bona fide issue exists as to his right to ultimate relief. In the hearing on the application for a temporary injunction the primary question is the right of the applicant to preserve the status quo of the subject matter of the suit pending a final trial of the case on its merits. To warrant the issue of a writ, the applicant needs only to show a probable right and probable injury. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549 (1953); Fraser et al. v. Kay, 251 S.W.2d 754 (Tex.Civ.App.— San Antonio 1952). Where the pleadings and the evidence present a case of probable right and probable injury the trial court is clothed with broad discretion in determining whether to issue the writ. The trial court's order will be reversed only on a showing of a clear abuse of discretion.

■ It is clear from the evidence that the appellees were not in default on any of the conditions set forth in the note or deed of trust. The fact that the appellees had not furnished the new owner of the indebtedness with an original, as opposed to a copy of the loss payable clause, was a technical violation of one of the stipulations contained in the deed of trust at most. However, the original policy was delivered prior to the notice of attempted acceleration on August 19, 1970. The loss payable clause naming Flynn was in effect as of April 1, 1970. Although the loss payable clause was not attached to the insurance policy and therefore was not in exact accord with the provisions of the deed of trust, it appears to us that the appellees have made a good faith attempt to comply with the requirements regarding insurance protection and all other conditions of the deed of trust.

■ Appellant contends that the plaintiffs committed an anticipatory breach of the contract because they stated that the monthly payment included principal and interest for the ensuing month, whereas, in fact the payment was for interest for the past month and principal for the ensuing month. During the hearing it was determined that there was an error in the amortization schedule. Appellant contends that this error entitles him to accelerate the note. It was undisputed that appellees were current in their payments and that

all past payments had been timely made. The fact that they had enumerated the payment as to interest as being one in advance instead of covering earned interest to date of payment did not amount to anticipatory breach of the entire contract, nor did it give rise for Flynn to accelerate the note. This point is overruled.

■ Appellant complains that the trial court's order enjoining the trustee's sale does in fact grant a perpetual and/or permanent injunction as to future possible breaches of the terms of the deed of trust. The order states in part:

> "It is accordingly ORDERED, ADJUDGED and DECREED that the Clerk of this Court issue a writ of Temporary Injunction pending final hearing and determination of this cause restraining and enjoining the Defendants, F. L. FLYNN and D. D. HENDERSON, TRUSTEE, from holding a Trustee's sale on October 6, 1970, or *thereafter* of the property described as: * * *." (Emphasis supplied.)

A temporary injunction will issue only for the purpose of maintaining the status quo pending final hearing. It is the words "or thereafter" without modification that appellant contends makes such temporary injunction permanent. The temporary order is hereby modified by adding to the words "or thereafter" the words "until final hearing hereon".

Finally, appellant contends that appellees failed to prove a probable right and probable injury. We have reviewed the entire record and find that this point is without merit. The foreclosure of the note by Flynn would have caused irreparable injury and damage to appellees. Sun Oil Company v. Whitaker, 424 S.W.2d 216 (Tex.Sup.1968); Transport Company of Texas v. Robertson Transports, Inc., supra.

We hold that the trial judge did not abuse his discretion in issuing the temporary injunction in order to maintain the status quo during the pendency of this suit.

We have considered all of appellant's points and they are overruled. The order of the trial court is accordingly affirmed as modified.

SHARPE, Justice (concurring).

I concur in affirmance of the judgment with the modification hereafter mentioned for the reasons stated in this opinion. The appellant D. D. Henderson is the trustee named in the deed of trust here in question and is a nominal party only. He will be referred to by name where necessary. F. L. Flynn is a real party at interest and will usually be referred to as "appellant".

Appellants' fifth point of error reads as follows:

> "The court erred in enjoining appellants ' * * * from holding a Trustee's Sale on October 6, 1970, or thereafter * *' for the reason that such is a perpetual or permanent injunction and prevents the mortgagee from ever foreclosing on the property irrespective of the fact that appellees are currently refusing to abide by the terms of the deed of trust and regardless of the fact that appellees may violate other provisions of the deed of trust hereafter."

The order granting a temporary injunction herein provides in part:

> "It is accordingly ORDERED, ADJUDGED and DECREED that the Clerk of this Court issue a writ of Temporary Injunction pending final hearing and determination of this cause restraining and enjoining the Defendants, F. L. FLYNN and D. D. HENDERSON, TRUSTEE, from holding a Trustee's sale on October 6, 1970, or thereafter of the property described as:
>
> > Lots 3, in block 63, Original Townsite of the City of Brownsville, Cameron County Texas;
>
> provided that Plaintiffs shall, prior to the issuance of such Temporary Injunction, file with the Clerk a bond execut-

ed by them in the sum of $5,000.00 payable to the Defendants with two or more good and sufficient sureties, approved and conditioned as the law requires.

The Plaintiffs having tendered the policy and the attachments during hearing hereon, the Clerk of this Court is hereby directed to substitute Xerox copies of Plaintiffs' Exhibit 6, International Insurance Company Policy R 184281, and the General Change Endorsement (Form No. 77) and Mortgage Clause (Form No. 130), being Plaintiffs' Exhibit 10 in the record and the originals thereof shall be delivered to Defendant, F. L. Flynn, or to his counsel of record; all of which shall be at Plaintiffs' cost and expense."

In my view the words "or thereafter" which follow "October 6, 1970" should be deleted from the order granting the temporary injunction. I would also hold that following the words "pending final hearing and determination of this cause" the provision "or until the further order of the court" should be added. The order entered by the trial court was obviously intended to be only a temporary injunction and the modifications mentioned will serve to remove any question that the injunction can be construed to be permanent. To the extent indicated I would sustain appellants' fifth point of error and reform or modify the judgment as hereinabove set out.

The rules applicable to this type of proceeding are stated by our Supreme Court in Transport Co. of Texas v. Robertson, 152 Tex. 551, 261 S.W.2d 549 (1953), wherein the court held in part as follows:

"In a hearing on an application for a temporary injunction the only question before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. James v. Weinstein & Sons, Tex. Com.App., 12 S.W.2d 959, 960. To warrant the issuance of the writ, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. Rosenfield v. Seifert, Tex.Civ.App., 270 S.W. 220, 223; Nagy v. Bennett, Tex.Civ.App., 24 S.W.2d 778, 781; High on Injunctions, 4th Edition, Vol. I, Sec. 5, p. 8. If the party enjoined prevails on a final trial of the case he finds protection against the improvident granting of the writ and consequent loss in the interim in the applicant's bond. Where the pleadings and the evidence present a case of probable right and probable injury, the trial court is clothed with broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of a clear abuse of discretion. Texas Foundries v. International Moulders & Foundry Workers' Union, [151 Tex. 231], 248 S.W.2d 460, 462. There is no abuse of discretion in the issuance of a writ if the petition alleges a cause of action and the evidence adduced tends to sustain it. Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235.

\* \* \* \* \* \*

The 'status quo' to be preserved by temporary injunction is 'the last, actual, peaceable, noncontested status which preceded the pending controversy.' Hartley v. Brady, Tex.Civ.App., 114 S.W.2d 406, 408; Dickard v. Crawley, Tex. Civ.App., 230 S.W.2d 833, 834."

Under the rules stated in *Transport*, the action of the trial court here in granting a temporary injunction (subject to the modification hereinabove mentioned) for the purpose of preservation of the status quo of the subject matter of the suit pending a final trial of the case on the merits or until further order of the court was within the discretion of the trial court and a clear abuse of that discretion is not established. The material issues involved in this controversy are still to be determined at the trial on the merits.

There are several statements in the majority opinion with which I am not in agree-

ment. One portion of that opinion reads as follows:

"At the time that Flynn elected to accelerate the note, the original policy was in his hands. This was a policy approved by the original holder of the indebtedness to whom Flynn was the successor assignee. Flynn did not have the right to approve or disapprove the insurance company under which the existing policy had been issued, as this was the prerogative of the original holder. Once the appellees had purchased the policy of insurance (approved by the original holder of the indebtedness) then until such time as such policy came up for renewal, the new holder, Flynn, was bound by the agreement between the appellees and his predecessor."

I particularly do not unqualifiedly agree with the last sentence of the above quotation. In my view, since appellant was a holder in due course of the note in question and assignee of the deed of trust securing it, he was entitled to rely upon the provisions of the deed of trust that appellees "shall keep said property fully insured in some company or companies approved by the holder of said indebtedness, to whom the loss, if any, shall be payable, and by whom the policies shall be kept." It is entirely possible that between the date appellant acquired by negotiation and assignment the note and deed of trust and the time the insurance policy approved by the original holder of the note came up for renewal that a number of good and sufficient reasons could exist which would authorize the then holder of the indebtedness to refuse to approve the company or companies issuing the policy. In my view, the above-quoted portion of the majority opinion (and particularly the last sentence thereof) is unnecessary to disposition of this appeal and the holdings therein, if given effect, would unduly restrict the rights of appellant as successor owner and holder of the note and deed of trust to disapprove in a proper case and for good cause

the company or companies issuing the insurance policy on the property in question.

For the reasons stated the judgment of the trial court should be reformed and as so reformed should be affirmed.