## THOMPSON et al. v. McDONALD.

### No. 8286.

Circuit Court of Appeals, Fifth Circuit.
April 12, 1938.

938

William McCraw and Albert G. Walker, both of Austin, Tex., and Curtis E. Hill, of Dallas, Tex., for appellants.

T. S. Christopher, William E. Dahl, and Lloyd E. Price, all of Fort Worth, Tex., for appellee.

Before SIBLEY and HOLMES, Circuit Judges, and MIZE, District Judge.

MIZE, District Judge.

The appellants in this court are the Railroad Commissioners of the state of Texas and certain enforcement officers of the state of Texas charged with the duty of enforcing the Motor Carrier Law within the state of Texas, and were defendants in the court below. Appellee was the complainant, and by his bill of complaint filed on the 17th day of January, 1936, sought an injunction against the appellants to restrain them from interfering with him or his employees while they were engaged in his business of transporting freight in interstate commerce while in the state of Texas.

Complainant alleged that for many years he had operated motortrucks in the transportation of property as an interstate common carrier for hire, and that he had been regularly operating as such interstate common carrier by motor vehicle for hire many years prior to June 1, 1935, and at all times since June 1, 1935; that this controversy involves his right to continue so to operate as an interstate common carrier for hire by motor vehicle over the highways of Texas and Oklahoma under the interstate commerce clause of the Federal Constitution, article 1, § 8, cl. 3, and particularly by reason of the enactment by Congress of the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq.; that for

several years prior to June 1, 1935, and subsequent to that date he transported various commodities from points within the state of Texas to points in the state of Oklahoma, and in such transportation he especially used within the state of Texas federal highways No. 75, No. 77, No. 80, No. 81, No. 90, No. 281, and No. 290, and that these were all federal-aided highways; that he used various highways within the state of Oklahoma, and had been authorized by the state of Oklahoma so to do in his business of moving interstate commerce; that he has not engaged in transporting property, nor does he desire to engage in the transportation of property, in intrastate commerce; that he was engaged exclusively in the transportation of interstate commerce.

He alleged that the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq., passed by Congress of the United States, was approved August 9, 1935, and by its terms became effective on and after October 1, 1935, and that by this act the sole and exclusive jurisdiction, power, and authority to regulate the transportation of passengers and property by motor vehicle operating in interstate commerce is vested exclusively in the Interstate Commerce Commission of the United States; that under the provisions of said act he would be entitled to apply for and to receive from the Interstate Commerce Commission a certificate of public convenience and necessity and such permits as would entitle him to continue his operations over said various highways in the transportation of property and goods moving in interstate commerce; and that he, under the terms and provisions of said act, will be entitled to receive said certificates and such permits as a matter of right under the provisions of section 206 of the act, 49 U.S.C.A. § 306; that under said act as amended the time for applying for said certificate or permit had not expired and would not expire until January 29, 1936; that by order of the Interstate Commerce Commission the effective date of section 206 of the act, the time for applying for the certificate had been extended until the 12th day of February, 1936, and that he was engaged in taking active steps to secure said certificate and necessary permits and to file the proper application therefor; that he had practically completed his application for filing and that same would be filed with the Interstate Commerce Commission within the time prescribed by the act of Congress and the order of the Railroad Commission; that at the time of the filing of his bill, no certificate or permit had been issued and that the time for the issuance of said certificates pursuant to said act had not yet arrived; that the jurisdiction over the regulation and control of the transportation by motor vehicle of passengers and property in interstate commerce nevertheless now exclusively rests in the Interstate Commerce Commission.

He further averred that he had complied with all requirements of the aforesaid act of Congress, or was attempting to comply therewith by filing the aforesaid application, and had at all times mentioned complied with all the appropriate and applicable police regulations of the state of Texas with reference to aforesaid act of Interstate Commerce. He averred further that the defendants were attempting to exercise the same control and power of regulation in the conduct of his interstate transportation business within the state of Texas as was exclusively vested in the Interstate Commerce Commission by the said act of Congress. He averred that because he had not received from the Railroad Commission of Texas the certificate of convenience and necessity under and pursuant to said Texas statutes, defendants have refused to issue and deliver to him the license tags or numbers that are required by the Railroad Commission to be affixed to all motor vehicles carrying property in the transportation business for hire as common carriers in the state of Texas; that the Railroad Commissioners, the law enforcement officer, and the Chief Inspector for the Railroad Commission of Texas had issued orders and instructions to all inspectors and highway patrolmen of Texas and all law enforcement officers to arrest all of the drivers and stop the trucks of complainant on and after January 15, 1936; and that the defendants would carry these orders into effect unless restrained by decree of the court.

He alleged that he had complied with all the police requirements of the state of Texas to permit him to operate in interstate commerce, and at the time of the filing of his bill of complaint his trucks were loaded with freight to be moved in interstate commerce, but that if he attempted to move them, his employees would be stopped and arrested.

He averred that he had complied with all the laws of the state of Texas in the following manner:

(1) That he had caused public liability to be issued, and that same was then in full force and effect.

(2) That his trucks were in excellent mechanical condition and properly registered for operation in the state in which they operate, and that his trucks were in every way suitable to operate safely on the highways and to transport property within and through the state of Texas.

(3) That he had offered to comply with every appropriate and applicable law of the state of Texas, and all rules and regulations of the Railroad Commission of Texas.

He alleged that the aforesaid acts of the respondents and the threatened continued action of interfering with the conduct of his business are unlawful, arbitrary, and without sanction of law, state or federal, and constitute an invasion of his rights guaranteed under the laws of the Constitution of the United States in the following particulars:

(1) That said acts deprived him of his rights under the Constitution vesting in the Congress of the United States exclusive jurisdiction over the regulation of interstate and foreign commerce. Const. art. 1, § 8, cl. 3.

(2) That said action and conduct constituted an unlawful deprivation of his property and property rights under the due process clause of the Fourteenth Amendment to the Constitution.

Complainant failed to allege affirmatively that he had applied to the Railroad Commission of the state of Texas for a permit, and that he had shown to the Railroad Commission that the structure of the highways proposed to be used by him was such that their proper preservation would not be impaired by the use sought by him. Moreover, he failed to allege that the safety of the public upon said highways over which he sought his route would not be unreasonably endangered, and that the additional use which he expected to impose upon said highways would not so congest traffic as to render them unsafe for the traveling public. Likewise, he did not allege affirmatively that the Railroad Commission of Texas had made an investigation of his application to use these highways and found as a fact that the use to which he intended to put them would not unduly render them unsafe for traffic or be unreasonably destructive of the highways.

The defendants answered the bill and denied that the complainant had been engaged in the bona fide operation as a common carrier for hire in interstate or foreign commerce either prior to June 1, 1935, or since that time, and averred that he' had been using the highways in violation of the laws of the state of Texas. They admitted, of course, the passage of the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq., by Congress, but denied that said act superseded the power of the Commission to provide for the safety of the traveling public on the roads, as well as the preservation of the highways of the state, and alleged specifically that the Railroad Commission "has the jurisdiction and power to prohibit the use of the highways of Texas for the transportation of property for hire if such highways are not of proper construction or in proper condition to maintain said traffic, or if the contemplated use of said highways by the complainant would increase the dangers and hazards on said highways and congest the traffic thereon and unreasonably interfere with the use thereof by the public, and respondents further say that article 911a, Vernon's Annotated Civil Statutes commonly referred to as the 'Motor Carrier Bus Law of Texas' and article 911b, Vernon's Annotated Civil Statutes commonly referred to as the 'Motor Carrier Truck Law of Texas', so far as such statutes effect the physical preservation of public highways of Texas and prevent an unreasonable interference by motor carriers for compensation and hire operated thereover with the use of such highways by the ordinary traveling public, were, at the time of their enactment, and now are, proper, reasonable, and necessary police regulations of the State of Texas, regulating the use of the public highways by Motor Carriers for compensation and hire thereover, and such statutes now remain in full force and effect to the extent that same affect the regulation of the use of the public highways of the State of Texas by Motor Carriers thereover for compensation and hire, whether operating in intrastate commerce or interstate commerce, notwithstanding the passage of the Motor Carrier Act of 1935."

Respondents averred specifically and affirmatively in their answer that on May

1, 1934, the complainant did file with the Railroad Commission an application for a certificate or permit to operate in interstate commerce over the route sought by his present bill and that this was denied by the Commission after a hearing had upon same, and made the findings of fact a part of its answer. The answer averred that the order denying the application was made on July 14, 1934, and thereafter the complainant appealed to the District Court of Travis county and that court entered judgment for the complainant and granted the injunction. The Railroad Commission appealed to the Court of Civil Appeals from that judgment and the Court of Civil Appeals, after having considered the matter, reversed the trial court and held that the order of the Railroad Commission denying his application was valid. The answer further averred there was no application for a rehearing before the Court of Civil Appeals, and that judgment then became final.

The answer denied that the complainant had complied with the police requirements of the state of Texas, and that the complainant had endeavored to comply with or was complying with the laws of Texas.

Respondents further averred affirmatively that the highways over which complainants sought to operate are not in such condition as to justify the issuance of any permit to him, and that said highways are now so congested that his operation would unreasonably interfere with the uses thereof by the traveling public. Respondents denied that their action or threatened action was unreasonable, arbitrary, or without sanction of law. They alleged that, notwithstanding the Motor Carrier Law of Congress, the Railroad Commission of Texas retained jurisdiction to determine whether or not the highways of the state were of such construction or the traffic thereon in such congested condition as that complainant's operation would unreasonably interfere with the use of the highways by the traveling public; that this jurisdiction was not taken away by the act of Congress.

Respondents further averred in their answer that should complainant present to the Commission an application to transport property for hire in interstate commerce over the highways of Texas, the said Commission would hear said application; that in hearing the application the Commission would require the applicant to show by facts that the highways proposed to be used by him were capable of withstanding the proposed use without undue injury and damage to them, and without unreasonable interference with their use by the general public for ordinary purposes. The respondents specifically averred that the Commission would not require the applicant to prove that public convenience and necessity require the proposed service, nor would it consider the adequacy of the existing transportation facilities or the effect the proposed operation would have on the existing transportation facilities in determining whether or not it would authorize said applicant to operate over said highways.

The cause was heard upon the bill and answer, oral and documentary evidence. The lower court was of the opinion that the Motor Carrier Act of 1935 of Congress, 49 U.S.C.A. § 301 et seq., superseded the Texas Motor Truck laws, Vernon's Ann. Civ.St. art. 911b, in so far as the Texas act gave to the Railroad Commission power to forbid the use of the highways by complainant's trucks when engaged exclusively in interstate commerce. The bill of complainant in the present case, stripped of the conclusions of the pleader, alleges in short that he is entitled to the certificate of public convenience and necessity from the Interstate Commerce Commission, and is therefore entitled to operate over the highways of the state of Texas as a matter of right, and that the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq., supersedes all laws of the state of Texas in so far as the control of the state highways over which interstate commerce may be carried is concerned. It is the contention of the appellee that the federal law is superior and exclusive in so far as the right to operate in interstate commerce is concerned, and if the Texas law as it existed prior to the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq., empowered the State Railroad Commission to issue any kind of interstate certificate, that power was superseded by the federal act—that Congress occupied the entire field. It is the contention of the respondents that the Motor Carrier Act does not preclude the Railroad Commission of the state from regulating the use of the highways by interstate carriers in so far as the preservation and safety of the highways may be necessary.

The record in this case discloses that on May 1, 1934, the appellee filed his application with the Railroad Commission of the state of Texas, and that tribunal, after a hearing, denied the application in July of that year. The opinion of the Commission discloses that it had given extensive investigation and serious thought to the application of complainant, as well as other applicants, and it made an exhaustive finding of fact and concluded that the application of the complainant should be denied. The Commission determined, from the hearing thus had, that heavy truck traffic, especially at night, makes the highways leading into the larger centers of population so dangerous that citizens are afraid to use the highways as much as they otherwise would; that citizens having business in the larger cities, such as Houston, Dallas, and some of the others, are unable to return home at night because of the danger, and remain in the cities rather than undertake to do so; that many of the citizens are deprived of the use of some of the principal highways by reason of heavy traffic leading to the large centers of population, and that citizens would use the highways more were it not for the fact that the truck traffic has caused such hazardous conditions that they fear for their safety if they undertake to use the highways. The Commission further found that at various seasons of the year there was a fluctuation of traffic, but particularly in the cotton season truck traffic was extremely heavy. The Commission had before it many of the citizens of the state, public officials and disinterested witnesses, and, after a full hearing, denied the application of the complainant, from which order the complainant appealed, but the order of the Railroad Commission was upheld by the Court of Civil Appeals, the opinion of which is reported in Railroad Commission v. McDonald, 90 S.W.2d page 581. It will be unnecessary to set out the details of the finding of the Commission for the reason that the opinion of the Court of Civil Appeals of the state of Texas set out at length the opinion of the Railroad Commission.

Complainant contends that under section 206 of the Motor Carrier Act of 1935, 49 U.S.C.A. § 306, the Interstate Commerce Commission has exclusive jurisdiction over the highways and forbids state interference. He relies largely upon the authorities of Southwestern Greyhound Lines, Inc. v. Railroad Commission of Texas et al., 128 Tex. 560, 99 S.W.2d 263, 268, 109 A.L.R. 1235; Railroad Commission et al. v. Bates et al., Tex.Civ.App., 108 S.W.2d 286; State ex rel. L. & L. Freight Lines, Inc. v. Douglas, 124 Fla. 579, 169 So. 389; Houston E. & W. T. R. Co. v. U. S., 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23; and the authorities therein cited, and Motor Carrier Act, 49 U.S.C.A. § 301 et seq.

■ The authorities of appellee above cited are not controlling. Vernon's Ann. Civ.St.Tex. art. 911b, § 6, sets out the things which an applicant for a permit must show before it will be granted. Sections 6 and 9 of article 911b designate what the Commission shall consider in granting or refusing permits and certificates, and these are further enlarged by section 4 (d), which specifically makes it the duty of the Commission to regulate and supervise motor carriers in all matters whether therein specifically mentioned or not, so as, carefully, to preserve transportation and relieve undue burden on the highways arising by reason of the use of the highways by motor carriers, adjusting and administering its regulations in the interest of the public. It was held in the case of Wald Storage & Transfer Co. v. Smith, D. C., 4 F.Supp. 61, that the very purpose of the act was to limit the use of the public roads by carriers for hire so as to conserve them for the more effective, safe, and convenient use of the general public, the primary purpose for which they were intended, as well as to conserve and strengthen the transportation facilities of the state—that the prime purpose of the act was to conserve the roads for their primary uses. See, also, Texport Carrier Corporation v. Smith et al., D.C., 8 F. Supp. 28. As stated by the court in the Texport Carrier Corporation suit, supra, the Motor Carrier Act of Texas is a comprehensive one and vests in the Railroad Commission exclusive powers and confers upon it important duties. It is plain, therefore, that the Legislature of Texas undertook to vest in the Railroad Commission full jurisdiction over the public highways of the state of Texas, and imposed the duty upon it to protect and preserve the highways of the state and to secure the safety of the traveling public thereon. Appellee, as above stated, contends that this authority is vested exclusively in the Interstate Commerce Com-

mission by the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq.

The Legislature, in the exercise of its police powers, has the authority to preserve its highways and protect the safety of the traveling public so long as its acts are not in direct conflict with an act of Congress regulating interstate commerce over the highways. Authority of the Legislature is limited or superseded by the act of Congress only in so far as the act of the Legislature may be in conflict with the express regulation of Congress. Congress, under its power to regulate interstate commerce, may occupy the entire field or it may limit its regulation, and when it does occupy the entire field, then state regulations by a Commission are void. But if Congress occupies only a limited field, then, such laws as the state may enact, within its police power, for the protection of its highways and the safety of the public thereon are valid, provided the acts of the Legislature are not in direct conflict with the act of Congress. Congress is not required to occupy the entire field, and until it does so occupy the entire field, the states have a large area over which they may exercise the power appropriate to their jurisdiction.

This rule does not apply to the subject of interstate commerce demanding uniformity of regulation. With reference to that situation, the state is without power because the Constitution itself occupies the field in that class of. cases, even though there be no federal legislation. The subject of protection of the highways in so far as they may be used for interstate commerce does not require uniformity of action, and, as a matter of fact, there is no uniformity of action by the various states at this time. The Interstate Commerce Commission has jurisdiction over the commercial considerations appertaining to the interstate truck business, but the preservation and safety of the roads themselves has been left with the state commissions. It is well settled that if Congress occupies only a limited field, then state regulation is not prohibited. A state statute is superseded only when the conflict is so direct and positive that the two acts cannot be reconciled.

The Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq., passed by Congress, does not provide for any tribunal to determine the method by which the public highways of any state shall be maintained or preserved, nor how the safety of the traveling public may be protected against any dangers that might be caused by an undue amount of traffic, nor does the act authorize the Interstate Commerce Commission to make the rules or regulations with reference to this. Moreover, said act does not provide that every person who shall receive a certificate of public convenience and necessity shall be entitled to the use of the various highways of the state, but the said act prohibits any one engaging in interstate commerce until he receives such certificates from the Interstate Commerce Commission. The Interstate Commerce Commission under the act has the power and exclusive authority to pass upon such applications and to refuse them. If it should refuse one, then such applicant would not be permitted to engage in interstate commerce. This is made clear by the act. That provision, however, is not in direct conflict with the provisions of the motortruck laws of the state of Texas which require the Railroad Commission of the state of Texas to determine whether or not the preservation of its highways and the safety of the traveling public will be endangered if there is an excessive amount of traffic on the highways. The determination of that question has been left to the states.

The question involved in this case has been settled by a decision of the Supreme Court of the United States handed down on February 14, 1938,—South Carolina State Highway Department et al. v. Barnwell Bros., Inc., et al., 58 S.Ct. 510, 82 L. Ed. ——. It is unnecessary to comment on this case as it is decisive of the question involved in the instant case. An authority exceptionally applicable in principle and very clear in diction is that of Kelly v. State of Washington, 302 U.S. 1, 58 S.Ct. 87, 82 L.Ed. ——. These authorities, supra, and the authorities cited therein demonstrate clearly that the Legislature of the state of Texas was acting within its powers, and that its acts have not been superseded by the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq.

The authority and control over the highways which the Railroad Commission is attempting to exercise herein is not the same authority and power to regulate interstate commerce as is vested in the Interstate Commerce Commission. The Interstate Commerce Commission has the power to act within the limits of the Motor Car-

944

rier Act, but no other. The order of the Railroad Commission is not shown to be arbitrary or unreasonable, but, on the contrary, was reached after mature thought and thorough investigation.

Accordingly, the judgment of the lower court is reversed and the case is remanded, with instructions to dismiss the bill.