ROBINSON v. WOODARD.

5-1093                                              296 S. W. 2d 672

Opinion delivered December 10, 1956.

[Rehearing denied January 7, 1957.]

*John R. Thompson* and *W. M. Buttram,* for appellant.

*Hanson & Green* and *McMillen, Teague & Coates,* for appellee.

PAUL WARD, Associate Justice. Appellee, Oklahoma Furniture Manufacturing Company, a corporation, located at Guthrie, Oklahoma is engaged in manufacturing furniture. This furniture is sold, and shipped by trucks, to retail dealers in a large number of states. On return trips to Guthrie the trucks carry raw materials to be used by the Company in the manufacturing process. For the purposes of this opinion we will assume (what appears to be a fact) that the furniture is carried in a large trailer-truck which is pulled by a detachable truck-tractor.

The owner and driver of one of these tractors was appellant, A. D. Woodward. On May 16, 1955, while on his way from Granada, Mississippi to Guthrie, Oklahoma with a trailer load of merchandise belonging to appellee Company, Woodward was arrested in West Memphis, Arkansas by enforcement officers of appellants. When first accosted by the officers Woodard exhibited an ''equipment lease agreement'' between himself and the company (to be later discussed), and after examining the same the enforcement officers arrested him for violation of Act 397 of 1955 because neither of the appellees held a permit or a certificate of convenience and necessity from the Arkansas Public Service Commission. By agreement this criminal case was continued indefinitely.

The Manufacturing Company had the same kind of lease agreement with others that it had with Woodard, and when said enforcement officers threatened to continue to arrest the operators of similar trucks (meaning tractors and trailors) carrying merchandise under the same circumstances above mentioned, appellees, on May 27, 1955, filed their complaint in the Chancery Court of Pulaski County asking for a declaratory judgment and

for a restraining order against appellants. After a hearing on April 17, 1956 the chancery court entered a decree in favor of appelles, finding that the appellant furniture Company was a *bona fide* private carrier and that appellee Woodard was not a "motor carrier" (or contract carrier) under Act 397 of 1955.

On appeal from the above decree appellants base their contention for a reversal on two grounds, to-wit: 1. The appellee, Woodard, is operating as a motor carrier in violation of Acts 367 of 1941 and 397 of 1955, and; 2. Act 397 of 1955 does not unduly burden interstate commerce and does not invade a field of regulation preempted by the Federal Motor Carrier Act.

1. We agree with appellants that Woodard was, under the facts and circumstances of this case, operating as a motor carrier (which includes a "contract carrier") in violation of the acts mentioned above. Section 5 (a) 8 of Act 367 of 1941, Section 5 (a) (8) of Act 397 of 1955 and Ark. Stats. § 73-1758 (a) (8) are exactly the same and read as follows:

"The term 'contract carrier by motor vehicle' means any person not a common carrier included under Paragraph 7, Section 5 (a) (this section) of this Act who or which, under individual contracts or agreements, and whether directly or indirectly or by lease of equipment or franchise rights, or any other arrangements, transports passengers or property by motor vehicle for compensation."

Section 5 (a) (9) of said Act 367 defines motor carrier in these words: "The term 'motor carrier' includes both a common carrier by motor vehicle and a contract carrier by motor vehicle." Section 5 (a) (d) of Act 397 of 1955 gives this definition of the term "motor carrier": "The term 'motor carrier' includes both a common carrier by motor vehicle and a contract carrier by motor vehicle, and any person performing for hire transportation service without authority from the commission." Section 22 (b) of Act 397 of 1955 (Ark. Stats.

§ 73-1775 (b)) further defines a "motor carrier" as follows:

"Any person who by lease or otherwise permits the use of a motor vehicle or vehicles by other than a carrier holding authority from this Commission, and who furnishes in connection therewith a driver or drivers, either directly or indirectly, or in any manner whatsoever exercises any control, or assumes any responsibility over the operation of such vehicle or vehicles, during the period of such lease or other device, shall be deemed a motor carrier."

Section 5(a) (14) [Ark. Stats. § 73-1758 (a) (14)] defines a "private carrier" as any person engaged in transportation by motor vehicle upon public highways, of persons or property, or both, *but not as a common carrier or a contract carrier.* Ark. Stats. § 73-1764 provides that no person shall engage in the business of a contract carrier over any of the public highways of this state unless he has a permit issued by the commission, and appellees have stipulated that no such certificate has been issued to Woodard, or other drivers.

The principal question for decision then is whether Woodard (and others bearing the same relationship to the Manufacturing Company) is a "contract carrier" (or a "motor carrier"), it being conceded that Woodard is not a common carrier. The answer to this question depends upon the correct interpretation of the relationship that existed between Woodard and the Manufacturing Company under the provisions of the lease agreement which we now consider.

For some years prior to January 24, 1955 the furniture company made its deliveries in equipment owned by it and driven by their own employees, but this proved unsatisfactory and so on the date mentioned an "equipment lease agreement" was entered into between the Manufacturing Company as lessee and Woodard as lessor —being the same agreement used thereafter and with other drivers. Among other things this agreement states; the lessor is the owner of certain motor vehicle equipment

(which we understand to be a truck-tractor) which the company hereby leases; the consideration going to the lessor is based on 14 cents or 15 cents per mile, depending on certain circumstances therein mentioned; lessor is bound to keep a mileage report which the company may audit and correct in favor of either party in event that it does not conform to the highway mileage; the truck-tractor is to be operated only by the lessor, or, in event of illness or disability by someone selected by the lessor and approved by the Company; the lessor is obligated to pay all operation costs including the cost of gasoline, oil, grease, repairs, maintenance, anti-freeze and such other costs as may be incident to the operation and maintenance of said equipment; the lessor is obligated to keep the equipment in first class operating condition, and must keep the equipment clean and washed with sufficient frequency, and if lessor fails to comply the Company has the right to cancel the agreement; the Company has the right to direct the use of the leased equipment in connection with its business and to designate the trips and routes; the Company is not liable to lessor for wear, tear, and depreciation on the leased equipment, and will not be liable for any damage caused by the equipment by accident, theft, or fire, etc.; the Company has the right, at its discretion, to take out insurance covering the property transported by said leased equipment, but the Company is not obligated to carry collision, fire, theft or any other type of insurance for the account of the lessor, and if the lessor carries insurance it shall be at his sole cost; the lessor at his own expense must procure Oklahoma Commission license plates to be used on said equipment; if the lessor only furnishes a tractor and uses a company trailer he is liable to the extent of $250 for any damage, other than wear and depreciation, occurring to the trailer, and; either party shall have the right to cancel the lease agreement for any reason upon giving 30 days written notice to the other party.

Appellee, Oklahoma Furniture Manufacturing Company, earnestly insisted that it is a private carrier and that Woodard is merely its employee, and that, therefore

neither had to secure a certificate of necessity and convenience or a permit from the Arkansas Public Service Commission. It further insists that the lease agreement is *bona fide* and not a ruse to evade the Commission's regulations. We concede that the Company used no bad faith in making the arrangements it did, but that is not the decisive issue. Sure, there is nothing illegal or wrong in the lease agreement *per se*. The vital question for decision is: Do the terms of the lease agreement prevent Woodard from being a "contract carrier" under the statutes and the facts in this case? This question, we think, must be answered in the negative.

In the case of *Public Service Commission* v. *Lloyd A. Fry Roofing Company*, 219 Ark. 553, 244 S. W. 2d 147, where, under facts that cannot be materially distinguished from the facts here, we held against appellees' contention. In the cited case J. R. Boshers occupied essentially the same status, under a lease agreement, that Woodard does here, and we held that Boshers was a contract carrier. The statute defining a "contract carrier" was the same when the *Fry* case was decided in 1951 as it is now, except that *evasion* has been made more difficult by the passage of Section 22 (b) of Act 397 of 1955 above copied.

In view of the *Fry* decision, *supra,* we deem it necessary here only to call attention to the material portions of the lease agreement to the ones in this case. There: Boshers owned the truck-tractor and leased it to Whittington who in turn leased it to the Fry Roofing Company; Boshers was to furnish gas, tires and other up-keep of the tractor; the lease agreement could be cancelled, by either party, merely by written notice (5 days) to the other; and; Boshers had to drive his own tractor. The reasons, and the supporting decisions, given in the *Fry* case are equally applicable in this case, and it would serve no useful purpose to repeat them here. We conclude that Woodard was a "contract carrier" and therefore is required to secure a permit from appellants.

2. Likewise, the decision in the *Fry* case, as affirmed by the United States Supreme Court, compels us

to hold the regulatory acts sought to be enforced against Woodard (and other drivers similarly situated) are not a burden on interstate commerce.

The opinion in the *Fry* case on appeal to the United States Supreme Court, 344 U. S. 157, 97 L. Ed. 168, 73 S. Ct. 204, on this point said: "The finding that the arrested drivers own and operate their trucks for hire makes them contract carriers as defined in the State Act. The state asserts no power or purpose to require the drivers to do more than register with the appropriate agency." Then, after noting that State and Federal authorities were obligated to cooperate on matters relating to interstate commerce, the court further said: "In this situation our prior cases make clear that a state can regulate so long as no undue burden is imposed on interstate commerce, and that a mere requirement for a permit is not such a burden."

Since there is nothing in the record before us to show that the Arkansas Public Service Commission has attempted or will attempt to impose any burdensome conditions to the granting of a permit to Woodard, we are bound to agree with appellants' view.

We are not convinced by appellees' argument that Section 22 (b) of Act 397 of 1955 is unconstitutional. They make this argument with the proviso that said section has the effect of changing the Company's status as a private carrier. The answer to this argument is; the equipment lease agreement and not Section 22 (b) effected the change in the Company's status. Having already concluded that Woodard is a contract carrier forecloses the possibility of the Company being a private carrier of the same merchandise.

Reversed.

Justice GEORGE ROSE SMITH dissents.