

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

April 23, 1963

Hon. Ben Ramsey
Hon. Ernest O. Thompson
Members
Railroad Commission
Austin, Texas

Gentlemen:

Opinion No. C-62

Re: Whether the Railroad Commission has jurisdiction to set down for cancellation a specialized motor carrier operator for failure to obtain permission to use the highways of Texas in interstate commerce in the transportation of federally exempt commodities.

You have asked this office for an opinion on the following question:

"Does the Railroad Commission of Texas have jurisdiction to set down for cancellation a specialized motor carrier operator for failure to obtain permission from this Commission to use the highways of Texas in interstate commerce in the transportation of federally exempt commodities?"

First, we point out that the Commission can and does have jurisdiction to set down for hearing for cancellation a specialized motor carrier operator who has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or that has violated the terms of his certificate or permit, subject, of course, to the appeal provided in Article 911b, Vernon's Civil Statutes. Article 911b, Section 12(b), V.C.S. Wattenburger v. Railroad Commission, 231 S.W.2d 924 (Tex.Civ.App. 1950, error ref.n.r.e.); Stotts v. Railroad Commission, 236 S.W.2d 210 (Tex.Civ.App. 1951, error ref.).

Your question, we believe, is whether the Railroad Commission can cancel the certificate of a specialized motor carrier who is using the highways of Texas to transport exempt commodities in interstate commerce in his equipment under his state certificate, without obtaining a permit from the Railroad Commission allowing him to transport the exempt commodities?

-299-

In your letter you give us the facts as follows:

> "We have a specialized motor carrier opera-
> tor who owns three specialized motor carrier cer-
> tificates, none of which authorize the use of
> Texas highways in the transportation of federally
> exempt commodities, who has used his equipment
> under his certificates to haul articles, which
> for the purposes of this question are exempt
> commodities, from a point in Texas to a town in
> another state and also from a town in another
> state to a point in Texas."

As you point out, the carrier is using his equipment under
his certificates to haul articles which for the purpose of this
question are "exempt" commodities.  By exempt commodities you
refer to articles covered by Section 303(b) of Title 49, U.S.
Code Annotated.  Carriers covered by this section are not regu-
lated by the Interstate Commerce Act or Commission except as
to qualification and maximum hours of service of employees and
safety of operation or status of equipment.  This means in ef-
fect that carriers in this class may transport for hire those
exempt commodities in interstate commerce without securing any
authority from the Interstate Commerce Commission.

Section 302(a) of Title 49, U.S. Code Annotated, provides
in part as follows:

> "The provisions of this chapter apply to
> the transportation of passengers or property
> by motor carrier engaged in interstate or for-
> eign commerce ..."   (Emphasis added)

Section 302(b) of Title 49, U.S. Code Annotated, is as
follows:

> "Nothing in this chapter shall be con-
> strued to affect the powers of taxation of the
> several states or to authorize a motor carrier
> to do an intrastate business on the highways
> of any state, or to interfere with the exclusive
> exercise by each state by the power of regula-
> tion of intrastate commerce by motor carriers
> on the highways thereof."  (Emphasis added)

It has been held that these sections of the Interstate
Commerce Act as well as the Act taken as a whole indicates
that:

"It is manifest that it was the intention
of Congress for the Interstate Commerce Commis-
sion to co-operate with the various states in
the administration of the federal law. That
the federal law does not displace entirely the
state laws upon this subject is too plain for
argument." S. W. Greyhound Lines v. Railroad
Commission, 128 Tex. 560, 99 S.W.2d 263 (1936);
Tips v. Railroad Commission, 110 S.W.2d 585
(Civ.App. 1937 error dism.).

In Lloyd A. Fry Roofing Company v. Wood, 344 U.S. 157,
162, the Court, in construing a holding of the public services
commission of Arkansas requiring a permit from a carrier trans-
porting commodities in interstate commerce where the trucker
had not obtained any authority from the Interstate Commerce
Commission, said that:

"In this situation our prior cases make
clear that a state can regulate so long as
no undue burden is imposed on interstate com-
merce, and that a mere requirement for a per-
mit is not such a burden."

Texas requires a permit similar to the one required by
Arkansas. Article 911b, Section 3. See also Railroad Commis-
sion of Texas v. Querner, 150 Tex. 490, 242 S.W.2d 166 (1951),
where the Court said:

"Under the federal motor carrier act the
Interstate Commerce Commission has the author-
ity to issue to a carrier of interstate commer-
ce a Certificate of Public Convenience and Ne-
cessity; but such authority does not deprive
the state from protecting its highways and the
public safety, and before a carrier can operate
in interstate commerce over the highways in
this state, under certificate issued by Inter-
state Commerce Commission, it must first obtain
a certificate from the Railroad Commission of
Texas to do so." (Emphasis added)

We can see no distinction under the Texas Act, insofar as
the requirement of the State statute is concerned that the car-
rier must secure a permit from the State before transporting
for hire in interstate commerce, between a carrier who handles
exempt commodities and therefore needs no certificate from the
Interstate Commerce Commission and a carrier transporting under

Interstate Commerce Commission authority.  Both must secure from the Railroad Commission the right to use the highways of Texas when transporting goods for hire.

Section 12(b) of Article 911b provides as follows:

> "The Commission at any time after hearing, had, upon notice to the holder of any certificate or permit and after opportunity given such holder to be heard, may by its order revoke, suspend or amend any certificate or permit issued under the provisions of this act, where in such hearing the Commission shall find that such certificate or permit holder has discontinued operation or has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or has violated the terms of said certificate or permit; provided, that the holder of such certificate or permit shall have the right of appeal as provided in this Act."

A carrier operating in interstate commerce without road rights (the term applied to the permits issued by the Railroad Commission to carrier authorizing the use of Texas highways in interstate commerce) from the Railroad Commission is violating the Statutes of Texas and the terms of his certificate issued under and by those laws.

It is our understanding that current specialized motor carrier permits include the following language:

> "This certificate and authority to remain in effect from and after the date hereof, subject to the provisions, limitations and restrictions of Chapter 314, Acts, Regular Session of the Forty-first Legislature, 1929, as amended at the Regular Session of the Forty-second Legislature, 1931, as amended Regular Session of the Forty-seventh Legislature, 1941, and as otherwise amended, and the rules and regulations of the Railroad Commission of Texas heretofore prescribed or which may be hereafter prescribed under and pursuant to the authority conferred upon it by law."

We also point out that Railroad Commission Motor Transportation Division General Order No. 33 is as follows:

".  .  . ACCORDINGLY, IT IS

"ORDERED BY THE RAILROAD COMMISSION OF TEXAS that any motor carrier subject to the jurisdiction of the Commission shall not permit, directly or indirectly, the operation of any motor vehicle in any other service than that authorized on the identification cards and the operating authority granted to such motor carrier by the Commission.  In the event the motor carrier subject to the jurisdiction of the Commission desires to use the motor vehicle in service other than that authorized, the said motor carrier shall at once remove the identification card and identification plate and immediately surrender them to the Commission at its offices at Austin, Texas, together with a letter stating the reason for such action.

"It is further ordered that all equipment taken out of service, as herein provided, shall not be placed in service until the carrier has obtained new identification cards and new identification plates in the manner and on forms prescribed by law."

If the carrier uses "his equipment under his certificates to haul articles, which for the purposes of this question are exempt commodities" as you indicate, he is violating the terms of General Order No. 33, and under 12(b) of Article 911b could have his certificates cancelled.

In the fact situation you have set out the Commission would in no way be imposing any burden on interstate commerce. As we understand the situation, even if, after the hearing, the Commission should cancel the speicalized carrier certificates (intrastate) of the carrier, the carrier could continue to haul in interstate commerce at will and as long as he desired commodities exempt under the Interstate Commerce Commission Act subject to his securing the necessary permit from the Railroad Commission of Texas.  The power of the Railroad Commission to cancel the specialized carrier permits granting authority to the carrier to transport in intrastate commerce could be in no way affected by the interstate activity.

We, therefore, are of the opinion that a specialized motor carrier transporting commodities exempt under the Federal

Interstate Commerce Act in interstate commerce must comply with the state statutes and secure a permit to use the highways of the State of Texas in interstate commerce as is required by Article 911b, Vernon's Civil Statutes. The carrier hauling "exempt" commodities in interstate commerce without a permit from the Railroad Commission of Texas authorizing the use of the Texas highways for such purpose is violating the terms and conditions of Section 3 of Article 911b, Vernon's Civil Statutes. It therefore follows that the Railroad Commission could cancel the certificates held by the carrier for his failure to comply with the state law which requires that he secure a permit before using the highways of the State to transport goods for hire in interstate commerce. Lloyd A. Fry Roofing Co. v. Wood, supra.

### S U M M A R Y

The Railroad Commission of Texas may set for hearing the question of the cancellation of a specialized motor carrier certificate of an operator who has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or that has violated the terms of his certificate or permit.

The Railroad Commission of Texas may cancel the intrastate certificate of a specialized motor carrier who uses his equipment under his state certificate to transport exempt commodities in interstate commerce for hire or compensation without having obtained a permit from the Railroad Commission to transport such exempt commodities on the highways of Texas.

Yours truly,

WAGGONER CARR
Attorney General of Texas

By _____
NORMAN V. SUAREZ
Assistant Attorney General

NVS:nss

APPROVED:
OPINION COMMITTEE
W. V. Geppert, Chairman
Linward Shivers
Dudley McCalla
Samuel Strong Pharr
Joseph Trimble

APPROVED FOR THE ATTORNEY GENERAL
BY:   Stanton Stone