

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

October 21, 1977

Honorable Mack Wallace, Chairman
Railroad Commission of Texas
E. O. Thompson Building
Austin, Texas 78711

Opinion No. H-1075

Re: Railroad Commission's
authority to require li-
censing of an ICC certified
transporter of liquefied
petroleum gas.

Dear Mr. Wallace:

You have requested our opinion concerning whether sec-
tion 5 of article 6066d, V.T.C.S., requires state licensing
of an Interstate Commerce Commission (ICC) certified trans-
porter that is not the ultimate consumer of the gas. You
further ask whether such a requirement is constitutional.

Section 5 of article 6066d provides in part:

> [N]or shall . . . persons, firms, cor-
> porations or associations engage in the
> sale, <u>transportation</u>, dispensing or stor-
> age of liquefied petroleum gases within
> this state, except where stored by the ul-
> timate consumer for consumption only,
> without having first obtained from the
> Railroad Commission of Texas under the
> provisions of this Act, a license, to do
> so. . . .

(Emphasis added). A transporter of liquefied petroleum gas
is clearly required to obtain a license from the Commission.
Attorney General Opinion O-2307 (1940). The statute contains
no exemptions for interstate carriers certified by the ICC.
Accordingly, in our opinion such transporters are required by
section 5 to obtain a license from the Commission.

Your second question is whether such a requirement vio-
lates the Commerce Clause of the Federal Constitution.
Title 49 U.S.C. §§ 306 and 307 provide for the issuance of
ICC certificates when "the proposed service . . . is or will
be required by the present or future public convenience and

p. 4402

necessity." Title 49 U.S.C. § 310a provides that Emergency Temporary Authorities (ETA) will be issued on the basis of "immediate and urgent need." In Fry Roofing Co. v. Wood, 344 U.S. 157 (1952), the Court upheld a requirement for a state permit to be obtained by a carrier operating exclusively in interstate commerce. The Court noted that the state agreed that it could not issue permits on the basis of "convenience and necessity" and thus distinguished the case from Buck v. Kuykendall, 267 U.S. 307 (1925). After explaining that the carrier in Fry had not obtained an ICC certificate the Court stated that:

> In this situation . . . a state can regu-
> late so long as no undue burden is imposed
> on interstate commerce, and that a mere re-
> quirement for a permit is not such a burden.

344 U.S. at 162. However, this language is not dispositive of your question for the carrier did not possess ICC certifi-cation.

In South Carolina State Highway Dep't v. Barnwell Brothers, Inc., 303 U.S. 177 (1938), the Court upheld width and weight regu-lations applied by South Carolina to trucks operating in inter-state commerce over claims that such regulations had been super-seded by 49 U.S.C. §§ 301 et seq., stating:

> The state has a primary and immediate
> concern in [the] safe and economical
> administration [of its local highways].

303 U.S. at 187. In reliance upon Barnwell, the court in Thompson v. McDonald, 95 F.2d 937 (5th Cir. 1938), aff'd on other grounds, 305 U.S. 263 (1938), held that the state could require a permit of ICC certified carriers in order to pro-tect the public safety and the local highways. The court noted that only conflicting state laws were superseded by 49 U.S.C. §§ 301 et seq., see Southwestern Greyhound Lines, Inc. v. Railroad Commission, 99 S.W.2d 263 (Tex. 1936), and that these local concerns had not been regulated by Congress. Since uniformity was not seen as necessary in these fields, the court upheld the state permit requirements. See Winton v. Thompson, 123 S.W.2d 951 (Tex. Civ. App. -- Austin 1938, writ ref'd). However, the United States Supreme Court affirmed the case on different grounds and specifically reserved the question of whether 49 U.S.C. §§ 301 et seq. had superseded such state laws. 305 U.S. at 267.

In Railroad Commission v. Querner, 242 S.W.2d 166 (Tex. 1951), the court stated that the Railroad Commission could re-quire a motor carrier's permit of a carrier certified by the

ICC, but held that such a permit could be revoked only for rea-
sons involving public safety or highway administration.  See
Southern Pacific Transport Co. v. Railroad Commission, 493 S.W.2d
502 (Tex. 1973).

   Thus to our knowledge the Supreme Court of the United States
has not addressed your precise question, but the weight of author-
ity and the Court's opinion in Barnwell would indicate that some
license requirement for LPG transporters certified by the ICC
would be constitutional.  The purpose of article 6066d is to pro-
tect the health, welfare and safety of the general public.  See
V.T.C.S. art. 6066d, §§ 3A, 3C; Attorney General Opinion H-1030
(1977).  A license is issued to an applicant who is able to prove
"he can and will meet the safety requirements provided in this
Act."  V.T.C.S. art. 6066d, § 9B(2).  Since licenses are not
issued pursuant to determinations of convenience and necessity,
but rather are required only under the state's police power to
protect the public health and safety, the Supreme Court's opinions
in Fry Roofing, supra, and Barnwell, supra, would indicate that
the application of article 6066d in this context is constitutional.

   However, it should be noted that the situation has somewhat
changed since these decisions were rendered.  The question in
Thompson and Querner was whether the State could require a motor
carrier's permit under article 911b, V.T.C.S.  Pursuant to ICC
regulation, such permits are no longer required; a uniform system
of registration is now utilized.  49 U.S.C. § 302(b)(2); 49 C.F.R.
§§ 1023.1 (1976) et seq.  Section 1023.11 et seq. provide for
registration of an ICC certificate with respective states; section
1023.21 et seq. provide for the designation of an agent for ser-
vice of process; section 1023.31 et seq. provide for the registra-
tion and identification of vehicles; and section 1023.51 et seq.
provide for presenting evidence of insurance.  Carriers operating
under an Emergency Temporary Authority (ETA) of a duration not
more than 90 days may follow a simplified notice procedure in lieu
of the section 1023 procedure.  49 C.F.R. § 1131.7 (1976).  An
application for an ETA must show proper insurance in each state
where the carrier operates.  49 C.F.R. § 1131.2(e) (1976).

   Thus a carrier that registers a permanent ICC certificate
pursuant to these regulations would have satisfied the require-
ments of article 6066d pertaining to registration of vehicles and
presentation of evidence of insurance.  V.T.C.S. art. 6066d,
§§ 11, 24.  However, the registration of certificates would not
duplicate the provisions of article 6066d which pertain to stan-
dards for vehicles, containers, and employees.  In light of the
high standard of care imposed upon handlers of liquefied petroleum
gas, Attorney General Opinion H-1030 (1977), the consequently
strong state interest in protecting the public safety, and the
lack of ICC regulations pertaining to this state interest, see
Maurer v. Hamilton, 309 U.S. 598 (1940), in our opinion the

granting of an ICC certificate of convenience and necessity would
not in itself preclude the State from requiring an LPG license
of interstate carriers.

The simplified notice procedure for ETA holders was upheld
in National Association of Regulatory Comm'rs v. United States,
397 F.Supp. 591 (D.D.C. 1975), aff'd, 423 U.S. 1041 (1976). It
is clear from that opinion that the granting of an ETA is intended
to bypass delays from state procedures.  Since an ETA is granted
on the basis of "immediate and urgent need," in our opinion the
courts would hold that delays incident to state licensing would
burden interstate commerce which is authorized under an ETA.
Accordingly, while we believe that the issuance of an ETA does
not in itself preclude the State from requiring the recipient
thereof to apply for and obtain an LPG license to protect the
public safety, in our opinion the State may not prevent the
holder of an ETA from operating during the processing of a li-
cense application under article 6066d.

While your questions are directed to ICC certifications and
authorities, we note that the Hazardous Materials Transportation
Act, 49 U.S.C. §§ 1801 et seq., governs the interstate transporta-
tion of liquefied petroleum gas.  49 C.F.R. § 172.101 (1976).
Title 49 U.S.C. § 1811(a) provides that inconsistent State re-
quirements are preempted.  Both the statute and the regulations
provide for a determination by the Secretary of Transportation
concerning preemption of state laws.  49 U.S.C. § 1811; 49 C.F.R.
§§ 107.201 (1976) et seq.  While the State or an affected party
may seek such a determination, your office has informed us that
no such determination has been sought regarding article 6066d.
Consequently, while in our view the licensing requirements of
article 6066d are not generally preempted by ICC jurisdiction,
we caution that the application of article 6066d to interstate
transportation is open to question pending the determination of
the Secretary of Transportation and any appeals therefrom.

## S U M M A R Y

The Railroad Commission is not precluded
from requiring an LPG license from a
transporter merely by the issuance of an
ICC certificate of convenience and neces-
sity or an ICC Emergency Temporary Autho-
rity; however, the State may not prevent
the recipient of the latter from operating
during the pendency of his state applica-
tion.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst